IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

INDECO UNION                           )
                                       )
-and-                                  )
                                       )
DAVID LEVINE                           )
                                       )
    Plaintiffs,          )
                                       )
v.                                     )      Case No. ___1:20-cv-1073___
                                       )
                                       )      **TRIAL BY JURY**
ANNE M. MEADOR                         )      **IS DEMANDED**
                                       )
    Defendant.           )
_____)

# **<u>COMPLAINT</u>**

Plaintiffs, Indeco Union ("Indeco") and David Levine ("Levine") (Indeco and Levine are collectively referred to as the "Plaintiffs"), by counsel, file the following Complaint against defendant, Anne M. Meador ("Meador").

Plaintiffs seek (a) compensatory damages, three-fold and punitive damages in an amount not less than **$9,350,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from February 7, 2020 to the date of Judgment at the rate of six percent (6%) per year pursuant to § 8.01-382 of the Virginia Code (1950), as amended (the "Code"), (c) attorney's fees pursuant to § 18.2-500 of the Code, and (d) court costs – arising out of the Defendant's defamation, insulting words, business and common law conspiracy, and tortious interference.

## I.  **INTRODUCTION**

1.      In Virginia, it is well-established that "a corporation may be defamed *per se* by statements 'which cast aspersion on its honesty, credit, efficiency or its prestige or standing in its field of business.'" *B2Gold Corp. v. Philip Bryan Christopher*, 2020 WL 2846633, at * 3 (E.D. Va. 2020) (quoting *Swengler v. ITT Corp. Electro-Optical Prods. Div.*, 993 F.2s 1063, 1071 (4ᵗʰ Cir. 1993) (quoting *Gen prods. Co., Inc. v. Meredith Corp.*, 526 F.Supp. 546, 549-550 (E.D. Va. 1981)); *id. Gilbertson v. Jones*, 2016 WL 4435333, at * 7-8 (E.D. Va. 2016); *JTH Tax, Inc. v. Grabert*, 8 F.Supp.3d 731, 741 (E.D. Va. 2014); *Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F.Supp.2d 483, 501 (E.D. Va. 2003).

2.      This case involves a series of false and defamatory statements and insulting words published in Virginia and elsewhere by Meador, Daniel M. Casto ("Casto") and Jefferson County Perspective, Inc. f/k/a Jefferson County Prosperity, Inc. ("JCP"), including the following statements and words:

| No. | Defamatory Statement | Published By | Published To | Date |
|---|---|---|---|---|
| 1 | "I would like the Board to know that my investment--the one that has likely made Indeco's 'reboot' possible--is tainted by deceit and manipulation … The decisions I made to disburse significant amounts of money [to Indeco] were influenced by David's repeated statements and promises over 7 ½ months that he would end his marriage and leave his wife for me" | Meador | Indeco Board, Phase One Capital | 03/26/2020 |

| No. | Defamatory Statement | Published By | Published To | Date |
|---|---|---|---|---|
| 2 | "I will hold David accountable for egregiously unethical and possibly fraudulent behavior.  This isn't just a personal matter: I believe the Board should be very alarmed by David's conduct and how it might have already impacted Indeco" | Meador | Indeco Board, Phase One Capital | 03/26/2020 |
| 3 | "David kept stringing me along to gratify his emotional and sexual needs and pulled a confidence trick on me to grift my money for the STO.  And this is where what I am describing becomes not only a matter of personal cruelty and exploitation, but one of manipulation and fraud relevant to Indeco.  David consciously chose to employ extreme methods of deception and manipulation to maintain my trust and secure my investment in Indeco" | Meador | Indeco Board, Phase One Capital | 03/26/2020 |
| 4 | "David was very anxious for the funds from my IRA to be wired to the Indeco account.  He spent an entire hour with me on Zoom making sure the Promissory Note was filled out correctly on Adobe Acrobat.  He told me that Desmoine really needed the money to be there right away for the STO to get started … With the funds in Indeco's bank account, the ruse that David loved me and intended to share a life with me could be dispensed with" | Meador | Indeco Board, Phase One Capital | 03/26/2020 |

| No. | Defamatory Statement | Published By | Published To | Date |
|-----|---------------------|--------------|--------------|------|
| 5 | "David manipulated me not only to satisfy his emotional needs and sexual gratification (which is repulsive), but that he consciously, coldly and calculatedly embarked on a plan of deception to manipulate me into investing very large sums of money in Indeco. David is not merely a cad but a con artist.  This fraudulent, unethical behavior on the part of Indeco's CEO is very much the Board's business" | Meador | Indeco Board, Phase One Capital | 03/26/2020 |
| 6 | "I have uploaded a list of unauthorized transactions and cash withdrawals David made from my business bank account … I've just emailed the bank manager to get more information about how transfers from my business were made and their origination (IP address) and how David was able to make cash withdrawals from it" | Meador (a/k/a "Cool Revolution") | "Freki" via Keybase | 04/03/2020 |
| 7 | "I've got some very serious allegations to add – will be uploading soon … in a nutshell – David has been taking money from Indeco so ThreeSquare can pay its bills … He took all this money from my account the Truthtellers without my knowledge and transferred it to Indeco [and then to ThreeSquare] … This explains everything about ThreeSquare and David's use of Indeco funds to finance it" | Meador (a/k/a "Cool Revolution") | "Freki" via Keybase | 04/05/2020 |
| 8 | "I suspect that the expenditures will be shocking" | Meador (a/k/a "Cool Revolution") | "Freki" via Keybase | 04/12/2020 |

| No. | Defamatory Statement | Published By | Published To | Date |
|---|---|---|---|---|
| 9 | "Levine is CEO of Indeco Union.  I made an investment in Indeco Union … On March 9, immediately after he acknowledged receipt of funds, Levine sent an email to his attorneys [that] informed them that Indeco Union would from that day forward pay his legal fees in the lawsuit *David A. Levine v. Rockwool*"<br><br>\* Meador's statements were republished by JCP on April 14, 2020 and again on April 16, 2020 on Facebook | Meador | Clerk of Court, Facebook and JCP | 04/14/2020 |
| 10 | "David Levine takes an investment and then suggests moving to Costa Rica.  Dunlap Bennett & Ludwig out of Leesburg is a full service law firm with offices around the world. I am sure they could help with any extradition questions" | JCP | Facebook<br><br>\* JCP's profile is set to "Public", so its posts may be read by anyone on the Internet, including its 2,178 followers | 04/17/2020 |
| 11 | "Monica Levine's husband talks about moving to Costa Rica with another woman right after getting the other woman to transfer her IRA to him. A few days later Monica is fawning over David Levine. That is one odd marriage.<br><br>**#ConGame**" | JCP | Facebook | 04/18/2020 |

| No. | Defamatory Statement | Published By | Published To | Date |
|-----|---------------------|--------------|--------------|------|
| 12 | "when are people going to realize this Levine is a warped dude that perpetrates fraud on everything he touches … now he tells this woman [Meador] a bunch of lies to get her to put money in one of his fraudulent scheme companies, then fires her, steals the money for his own personal use … wtf?  Can somebody say hey levine, don't drop the soap in the prison showers? … I hope Ann nails him to the wall and the FBI should be all over this … Looks like some cash was wired to him, right at the same time he was discussing fleeing the country to move to Costa Rica.  Only question is whether Monica was going with him or staying behind.  Where is the money now?  Costa Rica? | JCP | Facebook | 04/22/2020 |
| 13 | "Breaking: David Levine Investigated for Alleged Larceny … Meador advised someone took her journal/notebook from her residence.  Meador stated she believe the suspect is her ex-boyfriend David Levine … Meador stated she and Levine were dating for approximately seven months and also worked together.  Meador stated her journal was stolen from the residence on February 24, 2020, at approximately 12:00 hours when Levine was last at the residence before separating" | JCP | Facebook | 04/28/2020 |
| 14 | "We know David Levine was allegedly cheating on his wife with a woman he was taking money from (see affidavits filed in Federal Court)" | JCP | Facebook | 05/02/2020 |

| No. | Defamatory Statement | Published By | Published To | Date |
|---|---|---|---|---|
| 15 | "I have been in touch with other Indeco Union investors who are also concerned about David's misuse of investor funds. Individual Board Directors are accountable for David's actions" | Meador | Robert Whetsel | 05/07/2020 |
| 16 | "David is using you.  He's racing through his bankruptcies.  If they're settled, he'll be able to take the money raised by an STO and live well, defend himself from any legal action and move on to the next start-up.  He's not interested in making returns for investors … David defrauded me and fired me. David is a crook with no conscience.  Don't ever forget it". | Meador | Robert Whetsel | 05/08/2020 |
| 17 | "It seems like Levine would be more worried about keeping his wife Monica after having a 7 month long affair with an employee (and firing the woman 36 hours after getting her IRA)" | JCP | Facebook | 05/11/2020 |
| 18 | "Breaking News: Another David Levine Company in Bankruptcy! This time Indeco Union has filed for bankruptcy (involuntarily)" | JCP | Facebook | 06/05/2020 |
| 19 | "hey it looks like you [Levine] are spending your mistresses money on a beach vacation" | JCP | Facebook | 07/14/2020 |
| 20 | "Breaking: U.S. Bankruptcy Trustee Moves to Remove David Levine as CEO of Indeco Union … The Trustee seems to be suggesting that there is some money missing" | JCP | Facebook | 07/16/2020 |

| No. | Defamatory Statement | Published By | Published To | Date |
|---|---|---|---|---|
| 21 | "Hey @Steve Stolipher did you see that David's building was bought? and that his lawyers dumped him? More people taken advantage of" | Casto | Facebook | 07/30/2020 |
| 22 | "while David was allegedly busy having an affair and cuckolding his wife, Monica (according to google a female cuckold is called a cuckqueen), he was also allegedly accepting close to $400,000 from Anne Meador  on behalf of his company Indeco Union, $100,000 of which was allegedly put into a new company he created called the 'Scoby Society.'  Court documents say that Indeco solicited approximately $1.3 Million but is now only worth $5,000.  Where did all that money go?  What happened to all of the donations given to Climate Pictures?  How is David going to explain all of this to Oliver?" | JCP | Facebook | 08/26/2020 |
| 23 | "David Andrew Levine made the following transfers from the bank of [sic] account of The Truth Tellers, LLC, without authority to do so, and converted such funds to his own personal use in violation of the fiduciary duties attendant to his position of special trust within The Truth Tellers, LLC … Seems like the Bernie Madoff of Shepherdstown … A lot of what David Levine has done seems criminal" | Meador/JCP | Facebook | 09/09/2020 |

(the "Defamatory Statements").

3.     Meador, Casto and JCP published the Defamatory Statements in correspondence and email to Indeco's Board, to thousands on Facebook, and between and among themselves.   The Defamatory Statements relate to Indeco's business and investments.  David A. Levine, Indeco's CEO ("Levine"), is personally synonymous with Indeco and made the business decisions that are the subject of Meador, Casto and JCP's defamation.   Each Defamatory Statement referring to Indeco's CEO, Levine, was directed at Indeco and is of and concerning Indeco and Levine.  The references to actions taken by Indeco's CEO imply that such actions were undertaken at the behest, or certainly with the approval, of the organization itself.  Those who read the Defamatory Statements, including the Indeco Board and its investment banker, Phase One Capital, clearly understood them to be referring to Indeco and Levine and clearly understood them to convey a defamatory meaning, including that Levine and Indeco had committed serious crimes.  The Defamatory Statements caused Indeco's independent directors to resign, caused Indeco to lose its investment banker, caused the cancellation of Indeco's planned securities token offering (the "STO"), destroyed the value of Indeco's ongoing business, and irreparably injured Indeco's reputation.

4.     In this case, Indeco and Levine seek presumed damages, actual damages special damages and punitive damages as a result of Meador's statements and actions.  In addition, Indeco and Levine seek a permanent injunction prohibiting Meador and her agents from repeating the defamatory speech.

## II.  PARTIES

5.     Plaintiff Indeco is a Delaware public benefit corporation.   Indeco's principal place of business and headquarters is McLean, Virginia.  Indeco is a private

company that was developing blockchain solutions for smart city infrastructure, information security, personal identity management, supply chain integrity, and transfer of value.  Levine, Indeco's CEO, is a citizen of West Virginia.  Levine transacted Indeco's business and conducted its affairs from Indeco's office in McLean, Virginia.

6.     Defendant Meador is a citizen of Maryland.  She owns real estate and conducts substantial business in Virginia.  Meador is editor and publisher of DC Media Group, a progressive blog that covers environmental and social justice issues in the greater Virginia/Washington, DC area.  Meador and Levine met in September 2018 while Meador was covering a story involving Levine.  Levine had published an article in *Forbes* exposing corruption surrounding a development project being undertaken by Danish conglomerate, Rockwool.  Meador was strongly supportive of Levine's work to oppose the Rockwool factory and of his work as a social impact entrepreneur.  Meador eagerly volunteered that she had inherited several million dollars from her father and offered to fund Levine's documentary project, which was in production by a non-profit he founded called Climate Pictures, his litigation against Rockwool, and his entrepreneurial endeavors.  Meador told Levine that she was providing the funding because she believed in Levine, his success and potential as an entrepreneur, and the importance of his work in the world.  In June 2019, Meador asked her then romantic partner of eight years (and partner in DC Media Group) to marry her.  To Meador's shock and dismay, her partner revealed that he had been married since the 1980s and was still married.  Shortly afterwards, Meador propositioned Levine to engage in an intimate relationship. Meador made it clear that financial support for Levine, the litigation, the documentary, and Indeco were contingent on Levine's continued engagement in the

intimate relationship.   Over time, Meador became more obsessive, controlling and demanding in their relationship, leveraging her financial power over Levine.   She finally insisted that Levine divorce his wife and move in with her.   When Levine refused, Meador retaliated.   Meador's defamation and insulting words are born out of extreme jealously, malice, vengeance and a desire for retribution.   Meador is a woman scorned. On February 7, 2020, Meador sent Levine the following email:

---

David,

I was going to wait until Sunday to send this to you, but I'll go ahead and do it now, so you have plenty of time to think it over.

I don't want to meet you in Bethesda on Monday, if you're still going there. I'm not going to abide by the rules that placate Monica any more. I want you to come to my house and talk to me. Not Zoom, in person. I'm not asking you to leave Monica, I simply want to talk to you in private without scheming and machinations.

I want to be as unambiguous as possible. Come to my house and talk to me. If you don't, then our friendship is over, our romantic relationship is over, any possibility of a life together in the future is over—no second chances. I'd be very surprised if you came here against Monica's wishes, but I want to give you the opportunity.

I've never given anyone an ultimatum before. This is important. You don't treat me with respect or care. I love you. I'll always love you, and I don't think I'll ever want anyone else, but I won't accept these terms any more. If you regard me as precious to you as you say, then I'm asking so little of you.

Anne

---

Levine refused Meador's ultimatum.   Meador's behavior escalated and Levine broke off the relationship.   Meador then embarked on a campaign of defamation with Casto, JCP and others.[1]

---

[1]     Casto and JCP have been using Facebook for almost a year to publish false and defamatory statements about Levine.   In 2019, Levine filed suit against JCP, Casto and others for defamation. *See Levine v. Rockwool et al.*, Case CC-19-2019-C-139 (Jefferson County Circuit Court) (Pending).   Prior to February 2020, Meador fully supported Levine and even called for Casto to be disbarred because of his misconduct. After Levine rejected Meador and ended the relationship, Meador abruptly and maliciously turned on Levine and Indeco.

7.     Casto is an attorney and member of the Virginia State Bar.  He practices corporate and business law in Leesburg, Virginia, with the firm Atwill, Troxell & Leigh, P.C. [https://www.atandlpc.com/dan-casto/].  Casto is president of JCP.  Casto publicly supported the Rockwool factory.  He founded JCP to promote Rockwool and other commercial and industrial interests as well as "alt-right" candidates and ideology in Jefferson County, West Virginia.  Casto is former general counsel and Vice-President of Finance for Indeco.  In his capacity as Indeco's general counsel and V.P. Finance, Casto acquired confidential knowledge and information about Indeco that demonstrates that his statements about Indeco were made with actual malice; that is, knowledge that the statements were false and/or serious doubt as to the veracity of Meador's statements, which JCP simply repeated without investigation.  After Levine rejected Meador and ended their relationship, Meador and Casto conceived and implemented a plan to destroy Indeco and Levine.  In furtherance of the conspiracy, Meador provided Casto/JCP with non-public records, including her March 26, 2020 letter to Indeco's Board, confidential recordings of conversations between Levine and his lawyers converted by Meador, and a police report accusing Levine of theft.  Via telephone, email, text message and/or direct messages, Casto and Meador coordinated the publication and dissemination of the Defamatory Statements.  Casto and Meador agreed on a strategy for manipulating the Indeco Board, and filing and publishing pleadings in Levine's personal bankruptcy. Meador believed she could blackmail Indeco into returning her $394,000 investment in Indeco, despite having met and signed off on all the legal requirements of being a sophisticated, informed and accredited investor.  Meador and Casto coordinated their attacks and pressure on Levine, Indeco Directors, and Indeco's investment banker.  On

March 26, 2020, Meador penned an egregiously false letter to the Indeco Board and to its investment banker (parts of which are quoted verbatim in paragraph 2 above) and filed derogatory affidavits in Levine's bankruptcy.  Casto promptly republished these documents as part of the conspiracy to extort and injure Indeco in its business and reputation.  Just as Meador attempted to extort the Indeco Board, Casto tried to extort Indeco Board member Robert Whetsel ("Whetsel").[2]  In May 2020, it was reported to Whetsel that Casto "has recordings" and was threatening to go to Whetsel's boss at the FDA and the IG (Inspector General) about Levine misusing Indeco funds.  Whetsel believed that Casto's attacks on Levine and Indeco were harming Indeco's prospects, and Whetsel resigned from the Indeco Board.

8.     JCP is a West Virginia non-profit 501(c)(4) corporation.  JCP operates a Facebook page, @Fighting4You.  JCP uses the Facebook page as a weapon to publish opposition research and, admittedly, "attack ads".  At all times relevant to this action, Casto used JCP's Facebook page and acted as an agent of JCP with JCP's knowledge and consent to attack Indeco and Levine.  Casto, JCP and JCP's agents harbored and exhibited extreme ill-will for Levine and Indeco (demonstrated by the Facebook posts in 2019 and 2020 and group chat messages between Casto and others) that caused Casto and JCP to conspire with Meador to publish the Defamatory Statements at issue in this action.

---

[2]     Dr. Robert C. Whetsel currently serves as Data Arc Senior Advisory and Associate Director leading digital transformation within the U.S. Food & Drug Administration.  Whetsel's career spanned more than 25 years within the Department of Defense (DoD) and recent experience on an effort consolidating 13 DoD Agencies, encompassing 3 continents, 800 locations, 1100 buildings, 9000 enclaves, 500K seats, 1M endpoint devices, and over 50 Enterprise Services.

### III.   JURISDICTION AND VENUE

9.       The United States District Court for the Eastern District of Virginia has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 1332 (Diversity) and § 1367 (Supplemental Jurisdiction).  The parties are citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10.      Meador is subject to personal jurisdiction in Virginia pursuant to Virginia's long-arm statute, § 8.01-328.1(A)(1), (A)(3) and (A)(4) of the Code, as well as the Due Process Clause of the United States Constitution.  She is subject to both general personal jurisdiction and specific personal jurisdiction.  She owns property in Virginia and engages in continuous and systematic business in Virginia individually and related to her affiliations with Truthout.org, DC Media Group, and The Truth Tellers, LLC.  She committed multiple intentional torts and acts of defamation in Virginia, causing Indeco and Levine substantial injury, including loss of business and injury to reputation, in Virginia.  Meador has minimum contacts with Virginia such that the exercise of personal jurisdiction over her comports with traditional notions of fair play and substantial justice and is consistent with the Due Process Clause of the United States Constitution.

11.      Venue is proper in the Alexandria Division of the United States District Court for the Eastern District of Virginia pursuant to Title 18 U.S.C. §§ 1391(b)(1) and (b)(2).

### COUNT I – DEFAMATION *PER SE*

12.      Plaintiffs restate paragraphs 1 through 11 of this Complaint, and incorporates them herein by reference.

13.     Meador, Casto and JCP made, published and republished numerous false factual statements of and concerning Indeco and Levine.  These statements are detailed verbatim above.  Meador, Casto and JCP published the false statements without privilege of any kind.

14.     Meador, Casto and JCP's false statements constitute defamation *per se*. The statements accuse and impute to Indeco and Levine the commission of felonies and crimes involving moral turpitude and for which Indeco's officers and directors, including Levine, may be punished and imprisoned in a state or federal institution.  The false statements impute to Levine unfitness for an office of employment, dishonesty, unethical behavior and immorality, and cast aspersion on Indeco's honesty, credit, efficiency or its prestige or standing in its field of business.  The false statements also prejudice Indeco and Levine in their trade and business.[3]  As evidenced by many public Facebook comments, the Defamatory Statements were instantly understood by third-parties to accuse Indeco and Levine of crimes, fraud, theft, dishonesty and to impugn Indeco and Levine's reputation and standing in business.  One comment posted by a "Sarah Custer" stated the following about Levine:

> "This guy is a career con artist!  I seriously hope the plaintiff is also pursuing criminal charges as well!  I'd definitely stop him from getting away with discharging the debt but he also needs jail time with restitution!  This guy is insane, I'm surprised he's not already in prison!!!"

Another Facebook account named "**Nap Optional Lajoie**" stated:

---

[3]     After the Indeco Board received Meador's March 26, 2020 letter, Whetsel assured Meador that the Board was in frequent communications with Levine and that the Board was exercising appropriate oversight.  Over the next several weeks, Meador's pleas that Levine be removed as CEO became more insistent, without providing any substance.  Whetsel strongly believed that the best way for both all investors in Indeco to receive a return on their investments was for Levine to continue as CEO.

"Levine knows his wheelhouse: go to dumbed-down communities, snooker the delirious sheep, get their green, and go on to the next village idiots.  Oldest trick in the book, and you can see who fell for it: the 'illuminati' of the Panhandle."

Upon information and belief, Casto and JCP orchestrated, induced and encouraged others, including JCP members and Facebook followers to post these and many other insulting words.

15.    By publishing the false statements to third parties and on Facebook, Meador, Casto and JCP knew that the defamatory statements would be republished by third-parties to Indeco and Levine's detriment.  In addition to the original publications (identified above in paragraph 2), Meador is liable for all republications of the false and defamatory statements by third-parties under the doctrine (the "republication rule") announced by the Supreme Court of Virginia in *Weaver v. Home Beneficial Co.*, 199 Va. 196, 200, 98 S.E.2d 687 (1957) ("where the words declared on are slanderous per se their repetition by others is the natural and probable result of the original slander.").

16.    Meador, Casto and JCP's false statements caused substantial harm to Indeco and Levine's business and reputation.

17.    Meador, Casto and JCP made the false statements with actual or constructive knowledge that they were false or with reckless disregard for whether they were false.  They each acted with actual malice and reckless disregard for the truth for the following reasons:

a.    Based upon their review of Indeco's investment materials, review of venture grant and partnership proposals, through in depth discussions with Levine and as a result of Meador's direct participation in Zoom meetings and in-person meetings with Indeco's investment banker, Phase One Capital [http://phaseonecap.com/], and

Casto's tenure as an executive and officer of Indeco, Meador, Casto and JCP were each intimately aware of Indeco's business, investments, and the STO. Based upon their review of documents and information provided by Indeco, Meador, Casto and JCP knew their statements were false or entertained serious doubts as to both the veracity, truth and accuracy of their statements. For instance, Meador signed documents that warranted and represented that she had not invested in Indeco based upon any unwritten promises by anyone, including any alleged promise by Levine that he would leave his wife. Meador also knew that Indeco had properly accounted for the money she invested and used it for proper corporate purposes, including, without limitation, the timely purchase of stock in Scoby Society, a company that provides computer software for live digital communications, namely, live video and audio conferencing with multiple simultaneous users, teleconferencing, network conferencing, web conferencing, text messaging, instant messaging, and videotexting.[4] In spite of the known falsity of their statements and/or serious doubts as to veracity, Meador, Casto and JCP published demonstrably false statements as if they were true.

b. Meador, Casto and JCP misrepresented the extent of their knowledge. They knew their statements were materially false, and possessed information that demonstrated the falsity of the statements. *See Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 682 (1989) (a clear evasion from the truth and the failure to

---

[4] Through his work outside of Indeco with a non-profit organization, Levine came up with a new concept that the Indeco Board believed was very promising. Whetsel, for one, was grateful that Levine chose to include Indeco in the equation as a shareholder of Scoby Society. Many entrepreneurs would have left Indeco behind. Levine showed himself to take his commitments to his shareholders, investors, and creditors seriously.

interview an important witness, who was easily accessible, supports a finding of actual malice).

        c.     Meador, Casto and JCP continued to publish the false statements in the face of unambiguous evidence of falsity.

        d.     Meador, Casto and JCP acted intentionally, purposefully and in concert together and with others to accomplish an unlawful purpose through unlawful means, without regard for Indeco and Levine's rights and interests.  They chose to manufacture and publish false and scandalous statements and use insulting words, in order to foment controversy and undermine investor and Board confidence in Indeco and Levine.

        e.     The words chosen by Meador, Casto and JCP evince their ill-will, spite and actual malice.

        f.     Meador, Casto and JCP fabricated the claims about Indeco and Levine out of whole cloth.  In the total absence of evidence, they could not have had an honest belief in the truth of their statements about Indeco and Levine and the falsity of their statements may be inferred.

        g.     Meador, Casto and JCP harbored extreme bias, spite, ill-will and hatred towards Levine and acted with the intent to destroy Indeco and Levine's business and reputation.  Publication of the false statements was an unmitigated act of retaliation.

        h.     Meador, Casto and JCP reiterated, repeated and continued to republish the false and defamatory statements about Indeco and Levine out of a desire to hurt Indeco and Levine and to permanently cripple Indeco's business.

18. Meador, Casto and JCP lacked reasonable grounds for any belief in the truth of their statements, and acted negligently in failing to determine the true facts.

19. As a direct result of Meador, Casto and JCP's defamation, Indeco and Levine suffered presumed damages and actual damages, including, but not limited to, loss and injury to business, injury to reputation, loss of working capital, pecuniary loss and other special damages, costs, and other out-of-pocket expenses, in the sum of $3,000,000.00 or such greater amount as is determined by the Jury.

## COUNT II – <u>INSULTING WORDS</u>

20. Plaintiffs restate paragraphs 1 through 19 of this Complaint, and incorporates them herein by reference.

21. Meador, Casto and JCP's insulting words, in the context and under the circumstances in which they were written and tweeted, tend to violence and breach of the peace. Like any reasonable person, Indeco and Levine were humiliated, disgusted, angered and provoked by the insulting words.

22. Meador, Casto and JCP's words are fighting words, which are actionable under § 8.01-45 of the Virginia Code (1950), as amended.

23. As a direct result of Meador, Casto and JCP's insulting words, Indeco and Levine suffered actual damages, including, but not limited to, loss and injury to business, injury to reputation, loss of working capital, pecuniary loss and other special damages, costs, and other out-of-pocket expenses, in the sum of $3,000,000.00 or such greater amount as is determined by the Jury.

### COUNT III – <u>CONSPIRACY</u>

24.     Plaintiffs restate paragraphs 1 through 23 of this Complaint, and incorporates them herein by reference.

25.     Beginning in March 2020 and continuing through the present, Meador, Casto and JCP (including agents of JCP acting within the scope of their employment for JCP), combined, associated, agreed or acted in concert together and with others for the express purposes of defaming and injuring Indeco and Levine in their business and reputation.  In furtherance of the conspiracy and preconceived plan, Meador provided Casto and JCP with confidential recordings of calls between Levine and his attorneys, who were in litigation against Casto and JCP at the time,[5] and other non-public records. Casto and JCP agreed to republish Meador's false statements on JCP's Facebook page. JCP bragged on Facebook that Meador's false statements "shall be made manifest". Meador, Casto and JCP engaged in a joint scheme the unlawful purpose of which was to extort Indeco, destroy Indeco and Levine's reputations, and interfere with Indeco's ongoing contracts and business (STO and Scoby).

26.     Meador, Casto and JCP acted intentionally, purposefully, without lawful justification, and with the express knowledge that they were defaming Indeco.  As evidenced by their concerted actions in publishing the Defamatory Statements, Meador,

---

[5]     Casto told an associate at JCP that "[t]he recordings she gave me are quite fun.  Who records calls with their attorneys?"  Casto's associate at JCP privately commented that "[h]ell anyone with ½ a brain wouldn't record anything and share it with anybody.  After all that person could end up becoming a scorn [sic] ex-mistress.  And you [know] what they say about a scorn [sic] mistress."  In addition to the confidential recordings, which Casto as an officer of the Court should not have accepted, Meador shared intimate details about Levine with Casto, which published on Facebook.  Casto told fellow JCP members that "[i]t was small.  [Ann] said."

Casto and JCP acted with the express and malicious intent to cause Indeco and Levine permanent injury.

27.     Meador engaged in a business conspiracy against Indeco in violation of § 18.2-499 of the Code, and a conspiracy at common law to defame Levine and interfere with his business and property.

28.     As a direct result of Meador's willful misconduct, Indeco and Levine suffered actual damages, including, but not limited to, loss and injury to business and good will, loss of credit and standing, injury to reputation, pecuniary loss and other special damages, costs, and other out-of-pocket expenses, in the sum of $3,000,000.00 or such greater amount as is determined by the Jury.

### COUNT IV – <u>TORTIOUS INTERFERENCE</u>

29.     Plaintiff Indeco restates paragraphs 1 through 28 of this Complaint, and incorporates them herein by reference.

30.     Indeco had a valid contract with Phase One Capital to serve as Indeco's investment banker and reasonable business expectations of raising capital through its planned STO.  Indeco planned the STO under the Securities and Exchange Commission ("SEC") Regulation A exemption from registration which allows for raises from accredited and non-accredited investors up to $50,000,000.  Indeco selected partners, vendors, and an exchange for the trading of Indeco's security tokens.  Because over a year had elapsed from the purchase of about $500,000 in Debt Until Security Offering ("DUSTO") promissory notes under SEC Regulation CF and Regulation D exemptions from registration, the investor capital would have achieved liquidity in the planned STO. Based upon Levine's substantial experience and prior success with exempt offerings,

well-known to Meador and Casto, Indeco reasonably expected to raise at least $3,000,000 from its planned STO.

31.     Meador, Casto and JCP each knew about Indeco's contracts and all pertinent details of its STO.

32.     Meador intentionally interfered with Indeco's contract, property rights and business expectancies by, *inter alia*, (a) conspiring with Casto and JCP and defaming Indeco and Levine to Phase One Capital and the Indeco Board, (b) extorting Indeco and threatening its Board members.  Meador, Casto and JCP's actions caused Phase One Capital to terminate its contract with Indeco and caused the cancelation of Indeco's planned STO.

33.     Meador, Casto and JCP's actions and practices were and are illegal, independently actionable, defamatory, unethical, oppressive, over-reaching, fraudulent, hostile, immoral and sharp.

34.     The actions constitute tortious interference with contract and prospective economic advantage.

35.     As a direct result of Meador's tortious interference, Indeco suffered actual damage and loss, including, but not limited to, loss of business and income, injury to reputation, pecuniary loss and other special damages, and court costs in the sum of $3,000,000.00 or such greater amount as is determined by the Jury.

## COUNT V – <u>INJUNCTION</u>

36.     Plaintiffs restate paragraphs 1 through 35 of this Complaint, and incorporates them herein by reference.

37.     Meador, acting in concert with Casto and JCP, disseminated false and defamatory statements that caused irreparable harm to Indeco and Levine.  Indeco and Levine are unable to repair their reputations with the persons that Meador, Casto and JCP unilaterally contacted, especially the millions on Facebook whose identities are unknown.

38.     Monetary damages will not provide an adequate remedy for Indeco or Levine because, in the event Meador, Casto and JCP continue to defame Indeco and Levine, Indeco and Levine would be required to bring a succession of lawsuits to deter Meador and her co-conspirators from continuing to defame Indeco and Levine. Monetary damages may not effectively deter "judgment proof" or wealthy defendants.

39.     In light of the balance of the hardships between Indeco/Levine and Meador, a remedy in equity is warranted because Meador, Casto and JCP remain able to express themselves in a manner that does not repeat the statements that have been determined to be defamatory.

40.     Public interest would be served by an injunction narrowly tailored to prohibit repetition of the statements set forth in paragraph 2 that qualify as defamatory under Virginia law because such an injunction does not threaten to silence Meador completely.

41.     Because Meador has engaged in repeated acts of defamation *per se*, and the defamatory conduct at issue threatens to continue in the future, she should be permanently restrained and enjoined from publishing the defamatory statements set forth in paragraph 2 to recipients within the United States by mail, email, or other social media.

Plaintiffs allege the foregoing based upon personal knowledge, public statements of others, and records in its possession.  Plaintiffs believe that substantial additional evidentiary support, which is in the exclusive possession of Meador, Casto, JCP and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Plaintiffs reserve their right to amend this Complaint upon discovery of additional instances of Meador's wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Indeco Union and David Levine respectfully request the Court to enter Judgment against Meador as follows:

A.     Compensatory damages in the amount of $3,000,000.00 or such greater amount as is determined by the Jury;

B.     Three-fold damages in the sum of $9,000,000.00 in accordance with § 18.2-500 of Code;

C.     Punitive damages in the amount of $350,000.00 or the maximum amount allowed by law;

D.     Prejudgment interest from February 7, 2020 until the date Judgment is entered at the maximum rate allowed by law;

E.     Postjudgment interest at the rate of six percent (6%) per annum until paid;

F.     Reasonable attorney's fees pursuant to § 18.2-500 of the Code;

G.     Such other relief as is just and proper.

**TRIAL BY JURY IS DEMANDED**


DATED:        September 11, 2020


                    INDECO UNION
                    DAVID LEVINE


            By:    */s/ Steven S. Biss*
                    Steven S. Biss (VSB # 32972)
                    300 West Main Street, Suite 102
                    Charlottesville, Virginia 22903
                    Telephone:     (804) 501-8272
                    Facsimile:     (202) 318-4098
                    Email:         **stevenbiss@earthlink.net**

                    *Counsel for the Plaintiff*