**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| INDECO UNION, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.: 1:20-cv-01073-TSE-TCB |
| v. | ) | |
| | ) | |
| ANNE M. MEADOR, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

COMES NOW the defendant, Anne M. Meador, by counsel, and for her Memorandum of Law in Support of Motion to Dismiss, filed pursuant to Fed. R. Civ. P. 12(b)(1) and (6), states as follows:

### I.     STATEMENT OF FACTS[1]

Plaintiff, Indeco Union, is a Delaware public benefit corporation.[2] Compl. ¶ 5. Plaintiff, David Levine ("Levine"), is Indeco Union's CEO and has transacted business and conducted affairs on behalf of Indeco Union. *Id.* In September, 2018, Levine met Anne Meador ("Meador) while Meador, a journalist, was covering a story involving Levine. Compl. ¶ 6. Despite being married, Levine entered into an intimate relationship with Meador. *Id.* During the course of that relationship, Meador provided significant financial support to Levine for use in conjunction

---

1 The "facts" set forth herein are based on allegations in the Complaint [ECF No. 1], which the court must accept as true for purposes of a motion to dismiss.

2 A public benefit corporation ("PBC") is a type of for-profit corporate entity, similar to a C-corp, S-corp or LLC. In Delaware, PBCs are governed by Subchapter XV of the Delaware General Corporation Law ("DGCL"), which defines "public benefit" as a positive effect (or reduction of negative effects) on one or more categories of persons, entities, communities or interests, and can include benefits of an artistic, charitable, cultural, economic, educational, environmental, literary, medical, religious, scientific or technological nature.

with his various companies and entrepreneurial endeavors. *Id.* Sometime after February 7, 2020, Levine claims he broke off the relationship with Meador due to her obsessive, controlling and demanding behavior. *Id.* Thereafter, Levine claims that Meador, a woman scorned, retaliated by embarking on a "campaign of defamation," in conjunction with Daniel M. Casto ("Casto"), Jefferson County Perspective, Inc. f/k/a Jefferson County Prosperity, Inc. ("JCP") and others. *Id.*

Although Meador is the only named defendant in the Complaint, Indeco Union and Levine spend an inordinate amount of time setting forth wrongs which Casto and JCP allegedly engaged in which purportedly injured Indeco Union and Levine. Meador intends to limit her arguments to wrongs which she allegedly committed. Toward this end, Indeco Union and Levine assert that Meador made the following defamatory statements:[3]

| No. | Defamatory Statement | Published By | Published To | Date |
|-----|----------------------|--------------|--------------|------|
| 1 | "I would like the Board to know that my investment--the one that has likely made Indeco's 'reboot' possible--is tainted by deceit and manipulation … The decisions I made to disburse significant amounts of money [to Indeco] were influenced by David's repeated statements and promises over 7 ½ months that he would end his marriage and leave his wife for me" | Meador | Indeco Board, Phase One Capital | 03/26/2020 |

---

[3]The statements are numbered in the manner in which they are numbered in the Complaint.

| No. | Defamatory Statement | Published By | Published To | Date |
|-----|---------------------|--------------|--------------|------|
| 2 | "I will hold David accountable for egregiously unethical and possibly fraudulent behavior. This isn't just a personal matter: I believe the Board should be very alarmed by David's conduct and how it might have already impacted Indeco" | Meador | Indeco Board, Phase One Capital | 03/26/2020 |
| 3 | "David kept stringing me along to gratify his emotional and sexual needs and pulled a confidence trick on me to grift my money for the STO. And this is where what I am describing becomes not only a matter of personal cruelty and exploitation, but one of manipulation and fraud relevant to Indeco. David consciously chose to employ extreme methods of deception and manipulation to maintain my trust and secure my investment in Indeco" | Meador | Indeco Board, Phase One Capital | 03/26/2020 |
| 4 | "David was very anxious for the funds from my IRA to be wired to the Indeco account. He spent an entire hour with me on Zoom making sure the Promissory Note was filled out correctly on Adobe Acrobat. He told me that Desmoine really needed the money to be there right away for the STO to get started … With the funds in Indeco's bank account, the ruse that David loved me and intended to share a life with me could be dispensed with" | Meador | Indeco Board, Phase One Capital | 03/26/2020 |

| No. | Defamatory Statement | Published By | Published To | Date |
|-----|----------------------|--------------|--------------|------|
| 5 | "David manipulated me not only to satisfy his emotional needs and sexual gratification (which is repulsive), but that he consciously, coldly and calculatedly embarked on a plan of deception to manipulate me into investing very large sums of money in Indeco. David is not merely a cad but a con artist. This fraudulent, unethical behavior on the part of Indeco's CEO is very much the Board's business" | Meador | Indeco Board, Phase One Capital | 03/26/2020 |
| 6 | "I have uploaded a list of unauthorized transactions and cash withdrawals David made from my business bank account … I've just emailed the bank manager to get more information about how transfers from my business were made and their origination (IP address) and how David was able to make cash withdrawals from it" | Meador (a/k/a "Cool Revolution") | "Freki" via Keybase | 04/03/2020 |
| 7 | "I've got some very serious allegations to add – will be uploading soon … in a nutshell – David has been taking money from Indeco so ThreeSquare can pay its bills … He took all this money from my account the Truthtellers without my knowledge and transferred it to Indeco [and then to ThreeSquare] … This explains everything about ThreeSquare and David's use of Indeco funds to finance it" | Meador (a/k/a "Cool Revolution") | "Freki" via Keybase | 04/05/2020 |
| 8 | "I suspect that the expenditures will be shocking" | Meador (a/k/a "Cool Revolution") | "Freki" via Keybase | 04/12/2020 |

| No. | Defamatory Statement | Published By | Published To | Date |
|-----|----------------------|--------------|--------------|------|
| 9 | "Levine is CEO of Indeco Union. I made an investment in Indeco Union … On March 9, immediately after he acknowledged receipt of funds, Levine sent an email to his attorneys [that] informed them that Indeco Union would from that day forward pay his legal fees in the lawsuit *David A. Levine v. Rockwool*"<br><br>* Meador's statements were republished by JCP on April 14, 2020 and again on April 16, 2020 on Facebook | Meador | Clerk of Court, Facebook and JCP | 04/14/2020 |
| 15 | "I have been in touch with other Indeco Union investors who are also concerned about David's misuse of investor funds. Individual Board Directors are accountable for David's actions" | Meador | Robert Whetsel | 05/07/2020 |
| 16 | "David is using you. He's racing through his bankruptcies. If they're settled, he'll be able to take the money raised by an STO and live well, defend himself from any legal action and move on to the next start-up. He's not interested in making returns for investors … David defrauded me and fired me. David is a crook with no conscience. Don't ever forget it". | Meador | Robert Whetsel | 05/08/2020 |

| 23 | "David Andrew Levine made the following transfers from the bank of [sic] account of The Truth Tellers, LLC, without authority to do so, and converted such funds to his own personal use in violation of the fiduciary duties attendant to his position of special trust within The Truth Tellers, LLC … Seems like the Bernie Madoff of Shepherdstown … A lot of what David Levine has done seems criminal" | Meador/JCP4 | Facebook | 09/09/2020 |

Indeco Union and Levine rely on these allegedly defamatory statements in support of a claim for defamation *per se* (Count I) and insulting words (Count II). In addition, Indeco Union and Levine assert a claim of statutory conspiracy pursuant to Virginia Code section § 18.2-499 and common law conspiracy (Count III). Indeco Union also claims tortious interference with contract or business expectancy (Count IV). Both plaintiffs seek injunctive relief to preclude Meador from republishing the statements which are identified above (Count V). Meador submits that the court lacks subject matter jurisdiction as it pertains to Indeco Union, Levine is judicially estopped from pursuing any claim, and the Complaint fails to set forth sufficient facts to support the causes of action which Indeco Union and Levine seek to pursue. For all of these reasons, as will be elaborated upon below, Meador asks that this court grant her motion to dismiss and dismiss this case with prejudice.

---

4 It is unclear to whom this statement is attributed.

## II.    LAW AND ARGUMENT

### A.    Standard of Review – 12(b)(1)

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the court's subject-matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624 v. Va. Int'l Terminals,* 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (*citing McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936); *Adams* v. *Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) can attack subject-matter jurisdiction in two ways. First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject-matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n* 914 F. Supp. at 1338; *see also Adams,* 697 F.2d at 1219. In such a challenge, a court assumes the truth of the facts alleged by plaintiff. *See Int'l Longshoremen's Ass 'n,* 914 F. Supp. at 1338; see also *Adams,* 697 F.2d at 1219.

Alternatively, a Rule 12(b)(1) motion may challenge the existence of subject-matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a case, because a party challenges the court's "'very power to hear the case,'" the court is free to weigh evidence to determine the existence of jurisdiction. *Int'l Longshoremen's Ass 'n*, 914 F. Supp. at 1338 (*quoting Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977).[5] No presumptive truthfulness attaches to the

---

5 In addition, while extrinsic evidence is generally not to be considered at the Rule 12(b)(6) stage, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x. 395, 396-97 (4th Cir. 2006); *see also Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (district court may take judicial notice of public

plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

**B.      Standard of Review – 12(b)(6)**

The court, "in deciding a Rule 12(b)(6) motion, must take all well-pleaded material allegations of a complaint as admitted and review them in the light most favorable to the plaintiff." *De Sole v. United States*, 947 F. 2d 1169, 1171 (4th Cir. 1991). "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F. 3d 250, 255 (4th Cir. 2009). Pursuant to the standard established in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), compliance with Fed. R. Civ. P. 8(a)(2) requires more than "labels and conclusions," and a complaint must "state a claim to relief that is plausible on its face." *Id.* Facts that are merely consistent with a defendant's liability are insufficient to state a plausible claim. *Id.*

In *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court enhanced the burden plaintiffs must meet in order for their pleadings to survive a Rule 12(b)(6) motion. In *Twombly*, the Court rejected the prior rule, set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court stated that *Conley's* "no set of facts" standard had "earned its retirement" and the "phrase is best forgotten as an incomplete negative gloss on an

---

documents, such as court records, even when the documents are neither referenced by nor integral to the complaint). Further, this court may take judicial notice of its own records, including filings in the bankruptcy court. *See Anderson v. FDIC*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990) ("[T]he Bankruptcy Court is considered 'a unit of the district court' under 28 U.S.C. § 151, and we believe a district court should properly take judicial notice of its own records. . . .").

accepted pleading standard." *Twombly*, 550 U.S. at 563. Instead, the *Twombly* court stated that Fed. R. Civ. P. 8 requires a greater showing - a complaint must present enough facts to state an entitlement to relief that is "plausible" on its face. *Id.* at 570.

In explaining the new standard, the Court in *Twombly* stated "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's [Rule 8(a)(2)] obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 544 (citing *Papason v. Allain*, 478 U.S. 265, 286 (1986)). The Court emphasized, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 556 n.3 (citing 5 WRIGHT & MILLER § 1202, at 94, 95). Factual allegations must not only be made, they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In *Iqbal*, the Supreme Court expanded on the standards for Rule 12(b)(6) motions to dismiss. The Court explained that, although it remained true post-*Twombly* that courts ruling on such motions to dismiss must accept the allegations set forth in the complaint as true, this tenet does not apply to legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The Court explained that, while Rule 8 marks a "departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* Rather, in order to survive a motion to dismiss, a plaintiff must support the legal conclusions in the complaint with factual allegations sufficient to state a plausible - *not merely possible* - claim for relief. *Id.* at 678-79.

## C.    The court lacks subject matter jurisdiction over Indeco Union

It is alleged in paragraph 5 of the Complaint that Indeco Union is a Delaware public benefit corporation. It is further alleged in the same paragraph that Levine is Indeco Union's CEO and that he transacted Indeco Union's business and conducted its affairs from Indeco Union's office in McLean, Virginia. What is not disclosed to the court is the fact that both Indeco Union and Levine filed for bankruptcy protection before this suit against Meador was filed. Both bankruptcy proceedings are pending in the United States Bankruptcy Court for the Northern District of West Virginia.[6]

On July 16, 2020, in Levine's bankruptcy case, the Trustee filed a Motion to Operate Indeco Union's business. *See* Exhibit 1. In support, the Trustee argued that:

> "A chapter 7 debtor is required by statute to cease operation of a business upon filing for bankruptcy." *Nakhuda v. Mansdorf (In re Nakhuda)*, BAP No. NC-14-1235-TaPaJu, 2015 Bankr. LEX 649, at *4 (B.A.P. 9th Cir. Feb. 19, 2015) (unpublished). Thus, "a debtor has the affirmative duty to surrender all estate property and records to the chapter 7 trustee." *Id.* (citing 11 U.S.C. § 521(a)(4)). "Unauthorized continuing operation of a chapter 7 debtor-owned business and retention of control over its assets is absolutely inconsistent with this statutory mandate." *Id.* "Further, the Code also makes clear that continued operation, if allowed at all, can only occur by (or in cooperation with) the chapter 7 trustee and only after approval by the bankruptcy court." *Id.* (citing 11 U.S.C. § 721). "Thus, '[u]nlike in a chapter 11 case, where the Code expressly authorizes the debtor to continue to operate its business, in a chapter 7 case, the bankruptcy court can authorize only the trustee, and not the debtor, to operate the debtor's business pursuant to section 721.'" *Id.* (quoting 6 *Collier on Bankruptcy* ¶ 721.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012).

*Id.* at p. 3.

Levine opposed the Trustee's Motion to Operate Indeco Union's business. *See* Exhibit 2. The court held a hearing on September 2, 2020, after which it granted the Trustee's motion and

---

6 The case number for Indeco Union's bankruptcy is 3:20-bk-00485. The case number for Levine's bankruptcy is 3:19-bk-1048.

entered an order on October 6, 2020 vesting the Trustee with the sole authority to operate Indeco Union. *See* Exhibit 3. The order has not been vacated or modified and remains in full force and effect. *See* Exhibit 4. Accordingly, Levine has no legal authority, as CEO or otherwise, to pursue any alleged claim on behalf of Indeco Union. The only person capable of pursuing claims on behalf of Indeco Union at this point in time is Thomas H. Fluharty, the Trustee in Levine's bankruptcy case. Mr. Fluharty is not a party to this action and has not authorized Levine or his personal counsel, Steven S. Biss, to pursue any claim on behalf of Indeco Union against Meador. Accordingly, the court lacks subject matter jurisdiction over Indeco Union, and it should be dismissed with prejudice from this case.

### D. Levine's claims are barred by judicial estoppel

Levine filed for personal bankruptcy protection under Chapter 13 on December 13, 2019. *Id.* On February 26, 2020, the Chapter 13 proceeding was converted to a Chapter 7 proceeding. *Id.* Levine filed multiple bankruptcy schedules during the pendency of his bankruptcy. *Id.* On October 28, 2020, after the case against Meador was filed, Levine filed his final schedule, entitled "Summary of Your Assets and Liabilities and Certain Statistical Information." *See* Exhibits 4 and 5. Thereafter, on December 21, 2020, the court entered an Order of Discharge. *See* Exhibit 6.

In his final schedule, Exhibit 5, Levine was required to disclose "Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims." *See* Exhibit 5, p. 7, ¶ 34. In response, Levine disclosed that he had a claim against GeoStellar, Inc. in Bankruptcy Case No. 18-00045, which he valued at $397,631.99. *Id.* He also disclosed that he had filed a lawsuit for defamation against Rockwool, et. al., in the Circuit Court of Jefferson County, West Virginia, the value of which was unknown. *Id.* The third and final claim that Levine disclosed was a lawsuit for defamation he filed against Spirit of Jefferson County in

the Circuit Court of Jefferson County, West Virginia, with an estimated value of $45,000. *Id.* Levine claimed that he was entitled to an exemption as it pertained to his defamation suit against Spirit of Jefferson County. *Id.* at p. 4 of 5. What Levine did not disclose at anytime during the pendency of his bankruptcy was that he believed that he had a claim to assert against Meador and ***had in fact filed suit against her***.

Debtors seeking shelter under federal bankruptcy laws bear an affirmative duty to disclose all actual or potential legal claims, along with the estimated value of those claims, to the bankruptcy court on the requisite schedule of assets and liabilities accompanying the bankruptcy petition. *See* U.S.C. § 541(a)(1). Pursuant to this duty to disclose, debtors must disclose all potential causes of action, including litigation that is likely to arise in a non-bankruptcy setting. *See Brockington v. Jones*, 2007 U.S. Dist. LEXIS 96248 (D.S.C. Nov. 28, 2007) at *4 (citations omitted). The debtor has an obligation to disclose all potentially meritorious claims, not just those that are likely to succeed. *Id. at* *3. "Full and complete disclosure [in bankruptcy] is required to preserve the integrity of the judicial function of the bankruptcy courts" *See, In re USinternetworking*, 310 B.R. 274, 282 (Bankr. D. Md. 2004) (citing *Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D. N.Y. 1998). Importantly, the debtor's duty to disclose does not end once the petition and related forms are submitted to the bankruptcy court. Rather, the duty continues through the pendency of the bankruptcy proceeding and requires the debtor to amend his financial statements if his situation changes. *See Casto v. American Union Boiler Co. of West Virginia*, Civil Action No. 2:05-cv-757, 2006 U.S. Dist. LEXIS 14781, 2006 WL 660458, *2 (S.D. W.Va. March 14, 2006). Courts and creditors alike rely on a debtor's financial disclosures when making decisions as to a debtor's requests for protection under the bankruptcy laws, making a debtor's full and honest disclosure vital. *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir. 2002). Based on

the bankruptcy court record of Levine, it is indisputable that he failed to disclose any potential

claim against Meador to the bankruptcy court.

"Judicial estoppel is a principle developed to prevent a party from taking a position in a

judicial proceeding that is inconsistent with a stance previously taken in court." *Zinkand v. Brown*,

478 F.3d 634, 638 (4th Cir. 2007) (citing *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d

26, 28 (4th Cir. 1995)). It is "an equitable doctrine that exists to prevent litigants from playing 'fast

and loose' with the courts - to deter improper manipulation of the judiciary." *Folio v. City of

Clarksburg*, 134 F.3d 1211, 1217 (4th Cir. 1998) (quoting *John S. Clark*, 65 F.3d at 28-29). The

United States Court of Appeals for the Fourth Circuit has adopted a four-prong test to determine

whether judicial estoppel should be applied in a particular case. The doctrine applies where:

> 1) the party to be estopped [is] advancing an assertion that is inconsistent with a
> position taken during previous litigation; 2) the position [is] one of fact instead of
> law; 3) the prior position [was] accepted by the court in the first proceeding; and 4)
> the party to be estopped [has] acted intentionally, not inadvertently.

*Id.* (citing *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996)).

In the instant case, it is clear that judicial estoppel should apply to bar Levine's claims.

First, there can be no doubt that he has taken inconsistent positions regarding the fact of whether

or not he had a claim to assert against Meador. He has made such a claim in this litigation, but

failed to disclose any such claim in the bankruptcy proceeding. *See Stallings v. Hussmann Corp.*,

447 F.3d 1041, 1047 (8th Cir. 2006) ("A debtor's failure to list a claim in the mandatory bankruptcy

filings is tantamount to a representation that no such claim existed."); *Casto v. American Union

Boiler Co. of West Virginia*, Civil Action No. 2:05-cv-757, 2006 U.S. Dist. LEXIS 14781, 2006

WL 660458, *3 (S.D. W.Va. March 14, 2006) ("By omitting his existing claim and potential claims

from his disclosures, he averred to the bankruptcy court that no such claims existed. Consequently,

his position before this court that he has a valid age discrimination claim based on conduct that

occurred prior to his filing for bankruptcy is wholly inconsistent with the position he adopted during his bankruptcy proceeding."). Thus, the first and second prongs for invocation of judicial estoppel have been met in the instant case.

It is also clear that the prior position was accepted by the bankruptcy court. This is evidenced by the fact that the bankruptcy court entered an Order of Discharge, Exhibit 6. *See Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) ("The second element of the judicial estoppel test, acceptance by the bankruptcy court, is also satisfied. That court certainly confirmed Jethroe's plan at least in part based on its assessment of her assets and liabilities.").

Finally, to apply judicial estoppel, this court would have to find that Levine acted intentionally, and not inadvertently, when he failed to disclose the present action to the bankruptcy court. In bankruptcy cases, a "debtor's failure to satisfy its statutory disclosure duty is inadvertent 'only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.'" *In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999); *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002). There can be no doubt that Levine was aware of his claims against Meador during the pendency of his bankruptcy. In fact, he filed the instant lawsuit while the bankruptcy proceeding was pending and prior to discharge. Further, one can conclude that Levine's motive for non-disclosure of his claims against Meador was to prevent the Trustee and bankruptcy court from evaluating and assessing the claims to discern whether they might increase the assets of the estate or otherwise effect the court's decision making regarding Levine's request for bankruptcy relief. *See Hollins v. ITT Educ. Servs.*, 2011 U.S. Dist. LEXIS 90242 (D.S.C. Aug. 12, 2011) (holding the fourth element of judicial estoppel – motive – exists because "[b]ankruptcy court[s] rel[y] on … disclosures in determining whether they should grant a discharge. Under Chapter 7 bankruptcy, the court may decide not to grant a discharge if the

debtor has concealed something that would affect their financial position. 11 U.S.C. § 727(a)(3).") (internal citation omitted).

Meador submits that all of the elements for application of judicial estoppel are present as it pertains to claims brought by Levine. *See, Robertson v. Flowers Baking Co. Lynchburg, LLC*, 2012 U.S. Dist. LEXIS 29854 (W.D. Va. Mar. 6, 2012) (applying judicial estoppel to dismiss claim under 12(b)(6) where plaintiff failed to disclose potential claim during pendency of bankruptcy suit). Accordingly, it is requested that the court dismiss all claims brought by Levine with prejudice.

**E.    The Complaint does not support a claim for defamation *per se* (Count I)[7]**

The law of defamation per se comes from the common law. Virginia case law deems the following types of statements to be defamation *per se*:

> (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. (2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society. (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment. (4) Those which prejudice such person in his or her profession or trade. All other defamatory words which, though not in themselves actionable, occasion a person special damages are actionable.

*Shupe v. Rose's Stores, Inc.*, 213 Va. 374, 376, 192 S.E. 2d 766, 767 (1972) (citing *Carwile v. Richmond Newspapers, Inc.*, 196 Va. at 7, 82 S.E.2d at 591). A corporation may be defamed *per se* by statements "which cast aspersion on its honesty, credit, efficiency or its prestige or standing in its field of business." *Swengler v. ITT Corp. Electro-Optical Prods. Div.*, 993 F.2d 1063, 1071 (4th Cir. 1993) (quoting *Gen. Prods. Co., Inc. v. Meredith Corp.*, 526 F. Supp. 546, 549-50 (E.D.

---

7 At the risk of beating a dead horse, Meador continues to maintain that the court lacks subject matter to consider Indeco Union's defamation claim and Levine is judicially estopped from pursuing such a claim.

Va. 1981)).

"Pure expressions of opinion . . . cannot form the basis of an action for defamation." *Cummings v. Addison*, 84 Va. Cir. 334, 338 (Va. Cir. Ct. 2012) (quoting *Chaves v. Johnson*, 230 Va. 112, 119 (Va. 1985)). What constitutes a fact versus an opinion depends upon "whether the statement can be objectively characterized as true or false." *Owens v. DRS Auto. Fantomworks, Inc.*, 87 Va. Cir. 30, 32 (Cir. Ct. 2013)(citing *Jordan*, 269 Va. at 575-76). A statement is also considered an opinion if it is "relative in nature" and based on the viewpoint of the speaker. *Id.* at 32-33 (finding that the plaintiff's statement that the defendants were under "criminal and civil investigation" involved "generalizations that would require the Plaintiffs to define the terms based on their own knowledge, thus making those terms expressions of an opinion.").

Whether a statement is an actionable statement of fact or non-actionable opinion is a matter of law to be determined by the court. *Chaves v. Johnson*, 230 Va. 112, 119, 335 S.E. 2d 97, 101 (1985). In order to decide whether or not a statement constitutes defamation *per se*, the Court must read the statements in their entirety:

> In determining whether a statement is one of fact or opinion, a court may not isolate one portion of the statement at issue from another portion of the statement. Rather, a court must consider the statement as a whole.
>
> The requirement that an allegedly defamatory statement be considered as a whole also is vital to a determination of the truth or falsity of a defamation claim, because defamatory statements may be made by implication, inference, or insinuation.
>
> Thus, the factual portions of an allegedly defamatory statement may not be evaluated for truth or falsity in isolation, but must be considered in view of any accompanying opinion and other stated facts.

*Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 47-48, 670 S.E.2d 746 (2009) (internal citations omitted).

Keeping the above in mind, Meador will address each statement imputed to her in

paragraph 2 of the Complaint, which Indeco Union and Levine claim are defamatory.[8] Beginning with Indeco Union, Meador submits that none of the statements attributable to her defame Indeco Union. As set forth above, a corporation may be defamed *per se* by statements "which cast aspersion on its honesty, credit, efficiency or its prestige or standing in its field of business." *Swengler*, 993 F.2d at 1071. It is clear that the statements attributed to Meador are directed toward Levine individually. In comment 1, although Meador mentions Indeco Union, it is only to state that Levine engaged in unacceptable conduct to entice Meador to invest in Indeco Union. Such a statement does not cast aspersion on the corporation. In comment 2, Meador allegedly advises Indeco Union's Board that it should be "very alarmed by David's conduct." Again that comment does not defame Indeco Union, and is clearly opinion. Similarly, the reference to Indeco Union in comment 3 again simply refers to how Levine tricked Meador into investing in Indeco Union. There is nothing *per se* defamatory expressed about the corporation. The same is true for comment 4. In comment 5, Meador is alleged to have stated that Levine engaged in fraudulent and unethical behavior, and that as the CEO of Indeco Union, the Board should be concerned. That states nothing defamatory about the corporation because, in fact, if the CEO was engaged in such conduct, the Board, with its fiduciary duties, should be concerned. Comment 7 references Indeco Union, but only to explain Levine's use of the company's funds. It does not suggest Indeco Union engaged in a crime or otherwise imply anything which could be defamatory as it pertains to the corporate entity. Comment 8 is clearly an opinion, and does not refer to Indeco Union directly or by implication. Comment 9, on its face, is not defamatory. Comment 15 is not defamatory against Indeco Union for the same reasons Comment 5 is not. Again, Comments 16 and 17 make no

---

8 Meador takes no position, at this time, whether plaintiffs are private or public figures. Plaintiffs have not pled sufficient facts to allow anyone to make that determination.

reference to Indeco Union directly or by implication and are not defamatory. There are simply no statements which Indeco Union has attributed to Meador which establish defamation *per se*.

To the extent that Levine suggests that the statements set forth in paragraph 2 of the Complaint are sufficient to state a claim for defamation *per se* against Meador, she submits that, for the most part, they are not. The statements are either "relative in nature" and based on her viewpoint, opinion and/or fail to impute to Levine the commission of a criminal offense involving moral turpitude or unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment. In Comment 1, Meador is alleged to accuse Levine of deceit and manipulation in order to obtain finances from her. Meador submits that these allegations are clearly based on her viewpoint, opinion, and not defamatory as a matter of law. To the extent that Meador is alleged to have accused Levine of egregiously unethical and possibly fraudulent behavior, Meador submits that these comments also are based on her viewpoint, opinion, and not defamatory as a matter of law. The comments are not unlike those in *Owens, supra*, which were deemed not to be defamatory as a matter of law. The statements in Comment 3 fail to establish defamation *per se* for the same reasons the statements in Comment 1. The statements in Comment 4 are opinion, and do not on their face evidence an accusation of a criminal offense or unfitness to perform employment or want of integrity in the discharge of employment. Meador is simply accused of stating that after Levine obtained money from her to deposit in Indeco's account, he was done with her and dumped her callously. This is not an actionable defamatory statement. The statements in Comment 5 are not defamatory for the same reasons as those in Comment 1. Comment 8 is clearly an expression of opinion and not defamatory as a matter of law. Comment 9, on its face, is not defamatory. Comment 16 is not defamatory for the same reason that Comment 1 is not. In short, as a matter of law, the Comments set forth herein

are not defamatory *per se*, and any claim based upon them should be dismissed with prejudice.

### F. The Complaint fails to state a claim for insulting words (Count II)[9]

Virginia's insulting words statute, codified at Virginia Code § 8.01-45, states that: "All words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." This statute was originally meant to prevent dueling. *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1284 (4th Cir. 1987). The Virginia Supreme Court has since construed the statute to be identical to an action for defamation absent the requirement of publication. *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 6, 82 S.E.2d 588, 591 (1954). There are two elements for an action of insulting words: "(1) the words are construed as insults from their usual construction and common acceptance and (2) the words tend toward violence and breach of the peace." *Cobbs v. Commonwealth*, 55 Va. Cir. 1, 4 (Va. Cir. Ct. 2001).

While the "insulting words" statute appears to be fairly straightforward, there are two questions which do not appear to be well-settled. The first is whether, to be actionable, the "insulting words" have to be uttered face-to-face. The second question which is unclear is whether a corporation can assert a claim under the statute.

As to the first unsettled question, there appears to be quite a split of opinion. In *Thompson v. Town of Front Royal*, 2000 U.S. Dist. LEXIS 3876 (W.D. Va. Mar, 16, 2000), the court dismissed a claim for insulting words on a number of grounds. Among them was that, "the words allegedly spoken…cannot be construed as having been directed at a particular individual in a face to face confrontation and as presenting a clear and present danger of a violent physical reaction."

---

9 For reasons set forth in sections "C" and "D" of this brief, the court should decline to consider the merits of the claim for insulting words.

*Id.* at * 15. In rendering its opinion, the *Thompson* court relied on *Hutchins v. Cecil*, 44 Va. Cir. 380 (Cir. Ct. 1998). Ten years later, the Western District issued an opinion contrary to *Thompson*, concluding that a face to face confrontation was not required to state a claim under Virginia Code § 8.01-45. *See Trail v. General Dynamics Armament & Tech Prods.*, 697 F. Supp. 2d 654, 658 (W.D. Va. 2010).

Fast forward two years, and the Circuit Court of Fairfax County, Virginia issued an opinion suggesting that a face to face confrontation is a predicate for a claim under Virginia Code § 8.01-45, unless the words somehow otherwise incite an immediate breach of the peace. *See Hotung v. Hotung*, 85 Va. Cir. 241, 244 (Cir. Ct. 2012). In so finding, the court stated:

> This court is of the opinion that for Virginia Code §8.01-45 to be actionable the words must be conveyed face to face or in such manner as to incite an immediate breach of the peace. This result is supported by the reasoning that our insulting words statute is largely subsumed by defamation. *Allen & Rocks, Inc. v. Dowell*, 252 Va. 439, 443, 477 S.E.2d 741, 743 (1996) (noting the cause of action for insulting words has largely been assimilated into defamation claims); *see also Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1284 (4th Cir. 1987) (observing §8.01-45 has been interpreted by Virginia courts almost identically to defamation claims). The distinction between insulting words and defamation is that insulting words do not require publication to be actionable. *Tweedy v. J.C. Penney Co.*, 216 Va. 596, 601, 221 S.E.2d 152, 156 n.6 (1976); *Carwile v. Richmond Newspapers Inc.*, 196 Va. 1, 6, 82 S.E.2d 588, 591 (1954) (noting the difference between insulting words and defamation is defamation additional element of publication). Insulting words, however, require an immediacy that could cause a breach of the peace.

*Id.*

Finally, in 2015, this court held that it is not necessary to utter insulting words face to face to state a claim under Virginia Code § 8.01-45. *Goulmamine v. CVS Pharm., Inc.*, 138 F. Supp. 3d 652, 668 (2015). The court, in so ruling, stated, "[t]he 'face to face' language … is present in the case law, but had never actually controlled the outcome of a case." *Id.* at 667. The court also noted,

however, that no court in Virginia had actually held that a face to face utterance was *not* necessary to state a claim for insulting words. *Id.* at 668.

Based on the above, it is unclear whether a face to face utterance is required to state a claim for insulting words. Meador submits that this court should find that there is a face to face requirement, because that is what would present a clear and present danger of a violent physical reaction, which is what the statute is intended to protect against. Should the court agree, since none of the statements attributed to Meador were made face to face, all claims of insulting words must be dismissed with prejudice.

As to the second question which remains unsettled - whether a corporation can assert a claim under the statute – Meador submits that there does not appear to be any case where such a claim has been asserted. Further, Meador points the court to *Chesapeake Trust v. Chesapeake Bay Enter. (In re Potomac Supply Corp.*), 2013 Bankr. LEXIS 5435, FN 7, (Bankr. E.D. Va. Dec. 30, 2013), where the court itself pondered whether a corporation could be insulted by words that would lead it to violence and breach of the peace. That seems unlikely and non-sensical, and Meador submits that a cause of action under Virginia Code § 8.01-45 can not be stated in favor of Indeco Union.

Finally, for the same reasons that Indeco Union and Levine's defamation claims fail, their insulting words claim must also be dismissed. *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1284 (4th Cir. 1987) (holding defamation and insulting words claims "must ineluctably rise or fall together.") *Id.* at 1284. Therefore, the court should dismiss this count with prejudice.

**G.      The Complaint fails to set forth a claim for conspiracy under Virginia Code §
18.2-499 or common law**

Under the Virginia Conspiracy Act, Va. Code §§ 18.2-499 & -500, in order to sustain a
claim for statutory business conspiracy, any two persons are subject to criminal liability if they
"combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully
and maliciously injuring another in his reputation, trade, business or profession by any means
whatever." *Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Conn*, 144 F. Supp. 2d 558, 601 (W.D. Va.
2001); *see also* Va. Code Ann. § 18.2-499. An individual injured by a violation of § 18.2-499 may
file a civil action. To recover in an action for conspiracy to harm a business, the plaintiff must
prove "(1) a combination of two or more persons for the purpose of willfully and maliciously
injuring plaintiff in his business, and (2) resulting damage to plaintiff." *Allen Realty Corp. v.
Holbert*, 227 Va. 441, 449 (Va. 1984). There can be no claim for conspiracy where the alleged
damage is to the professional or personal reputation or personal or employment interests of an
individual. *See Andrews v. Ring*, 266 Va. 311, 319 (Va. 2003); *Loria*, 39 Va. Cir. at 541. The
Virginia Conspiracy Act is aimed at conduct which injures a business and excludes employment
from its scope. *Loria*, 39 Va. Cir. at 541. Additionally, in Virginia, "actions for common law civil
conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of
an act that is itself wrongful or tortious." *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207,
215, 754 S.E.2d 313 (2014).

First, as for Indeco Union's claim for statutory business conspiracy ***and/or*** common law
conspiracy, neither Levine nor his counsel, Steven S. Biss, may pursue the claims for reasons set
forth above in Section "C." That should end the court's consideration of the claims, and they should
be dismissed with prejudice.

However, even if the court was to fully evaluate Indeco Union's claim for statutory conspiracy, it must fail. That is because Indeco Union does nothing more than state a formulaic recitation of the elements of a cause of action: "[b]eginning in March 2020 and continuing through the present, Meador, Casto and JCP (including agents of JCP acting within the scope of their employment with JCP), *combined, associated, agreed or acted in concert together and with others for the express purposes of defaming and injuring Indeco and Levine in their business and reputation.*" Compl. ¶ 25 (emphasis added). There are no allegations describing a preconceived design or plan among the alleged conspirators.[10] Under any pleading standard, these allegations are clearly insufficient to state a claim of business conspiracy. *See First Hand Comm., LLC v. Schwalbach*, No. 1:05cv1281, 2006 U.S. Dist. LEXIS 87844, 2006 WL 3500901, at *5 (E.D.Va. Dec. 4, 2006) (dismissing a business conspiracy claim where, "[i]n direct conflict with the guidance from *Bay Tobacco*, [plaintiffs] fail to aver any concerted action or preconceived plan, but instead ambiguously plead a conspiracy of 'working together in a scheme'"). The lack of factual averments, as described above, mandates that the claim be dismissed, as "the plaintiff must first allege [facts to show] that the defendants combined together to effect a 'preconceived plan and unity of design and purpose, for the common design is the essence of the conspiracy.'" *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (quoting *Bull v. Logetronics, Inc.*, 323 F. Supp. 115, 131 (E.D. Va. 1971)). Conspiracy must also be pled with particularity, and "in order to survive a motion to dismiss, plaintiff must at least

---

10 In fact, it appears that plaintiffs assume that there was a conspiracy simply by virtue of the fact that Meador, Casto and JCP were all commenting negatively about Indeco Union and/or Levine at the same time. However, without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. *Lokhova v. Halper*, 441 F. Supp. 3d 238 (E.D. Va. 2020). Coincidentally, the plaintiff in *Lokhova* was represented by Steven S. Biss.

plead the requisite concert of action and unity of purpose in more than 'mere conclusory language.'" *Id.* (quoting *Lewis v. Gupta*, 54 F.Supp.2d 611, 618 (E.D. Va. 1999)).

In addition, the few facts which are pled in support of the statutory conspiracy claim do not establish other basic elements of such a claim. In this regard, Indeco Union asserts that, "[i]n furtherance of the conspiracy and preconceived plan, Meador provided Casto and JCP with confidential recordings of calls between Levine and his attorneys, who were in litigation against Casto and JCP at the time, and other non-public records. Casto and JCP agreed to republish Meador's false statements on JCP's Facebook Page." Compl. ¶ 25. There is no assertion that Meador obtained the so called "confidential recordings of calls between Levine and his attorneys" or other non-specific "non-public records" improperly, by theft or otherwise. There is also no claim that she committed any illegal act by turning such documents and recordings over to Casto and JCP. There is also no claim that any of the records or taped conversations were ever published by Casto and/or JCP. Accordingly, to the extent that the Complaint relies on those actions in support of the statutory conspiracy claim, since they are not illegal acts and/or the documents and recordings turned over were not published, no claim for statutory business conspiracy is stated.

To the extent that Indeco Union asserts that "Casto and JCP agreed to republish Meador's false statements on JCP's Facebook Page," none of the statements identified that JCP and/or Casto made with respect to Indeco, as detailed in paragraph 2 of the Complaint, are defamatory or attributed to information obtained from Meador. In fact, most of the statements made by JCP and/or Casto regarding Indeco Union appear to be obtained from public sources, such as court filings. In addition, none of the statements attributable to Meador state anything defamatory or even arguable defamatory against Indeco Union. For all of the aforesaid reasons, Indeco Union has not stated a statutory business conspiracy claim, and it should be dismissed with prejudice.

With respect to any claim by Levine for statutory business conspiracy, his claims are judicially estopped for reasons cited above in Section "D." In addition, the Fourth Circuit has noted, with respect to the statutory business conspiracy statutes, that "in an unbroken line of federal district cases . . . the federal district courts in Virginia have consistently held that a right of action is afforded funder these statutes] only when malicious conduct is directed at property, *i.e.* one's business and applies only to conspiracies resulting in business-related damages." *Conyers v. Virginia Hous. Dev. Auth.*, JRS-12-458, 2012 U.S. Dist. LEXIS 134908 2012 WL 4338649, at \*7 (E.D. Va. Sept. 20, 2012) (internal quotation marks omitted) (citing *Buschi v. Kirven*, 775 F.2d 1240, 1259 (4th Cir. 1985)): *see also Andrews v. Ring*, 266 Va. 311, 319, 585 S.E.2d 780 (2003) (holding that sections 18.2-499 and 18.2-500 do not apply to personal or employ merit interests); *Shirvinski v. United States Coast Guard*, 673 F.3d 308, 321 (4th Cir. 2012) (finding that these sections did not apply to plaintiff's allegations because plaintiff alleged injuries only to his personal employment prospects). Thus, to the extent that Levine alleges damages other than as they pertain to Indeco Union, no claim has been stated. Finally, to the extent that Levine believes he has a claim as the "owner" of Indeco Union, they fail for the same reason Indeco Union's statutory business claim fails.

With regard to both plaintiffs' common law conspiracy claims, they would have to plead facts to establish "a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means." *Bay Tobacco*, 261 F. Supp. 2d at 499. As with Virginia's statutory business conspiracy claim, a common law conspiracy claim requires plaintiffs to adequately allege concerted action. *Id.* For the reasons discussed above, the Complaint does not sufficiently allege concerted action, and therefore this claim should be dismissed with prejudice.

**H. Plaintiffs[11] cannot pursue and have not established a viable claim for tortious interference with contract**

In Virginia, shareholders, managers, owners, and employees do not have legal standing to bring suit for tortious interference on behalf of a corporation. *Keepe v. Shell Oil Co.*, 220 Va. 587, 591, 260 S.E.2d 722 (1979); *Schur v. Sprenkle*, 84 Va. Cir. 418, Id. at *6 (Richmond Cir. Ct. 2012) (holding that owner of a limited liability corporation did not have standing for tortious interference claim where the corporation was a party to the contracts at issue and he was not). "The corporation is a legal person, separate and distinct from the persons who own it, and the corporation, as the alleged owner and operator of the business, is the person entitled to" bring the claim. *Keepe*, 220 Va. at 591. As Meador has argued above in section "C," Indeco Union is under the sole control of the bankruptcy Trustee pursuant to an order of the bankruptcy court. He is the only one who can pursue Indeco Union's claim for tortious interference with contract. Neither Levine, nor Steven S. Biss, may pursue the claim, and it should be dismissed with prejudice.

Further, even if the court were to evaluate whether such a claim has been stated, it has not. A claim of tortious interference with business expectancy must allege: "1) the existence of a business relationship or expectancy, with *a probability* of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) *a reasonable certainty* that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to the plaintiff." *Commercial Bus. Sys., Inc. v. HalifaxCorp.*, 484 S.E. 2d 892, 896 (Va. 1997) (emphasis added). These elements are not satisfied.

First, while the Complaint baldly asserts that Indeco Union held a business expectancy with anticipation of future benefits in the form of raising $3,000,000 from its planned STO, the

___

11 It appears that this claim is brought only on behalf of Indeco Union.

"formulaic recitation of the elements" is insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, plaintiff "must establish a 'probability' of future economic benefit ... ; a 'possibility' that such benefit will accrue is insufficient." *Commercial Bus. Sys. v. Halifax Corp.*, 484 S.E.2d at 897. Indeco Union states only that it had "planned" an STO and that given "Levine's substantial experience and prior success with exempt offerings, ... Indeco reasonably expected to raise at least $3,000,000 from its planned STO." But, expectancy of future economic benefit from something which is merely planned is too general to support a tortious interference claim.

Indeco Union also does not assert that Meador had any knowledge of the planned STO, which it hoped would raise $3,000,000. Rather, the only knowledge attributed to Meador relates to Indeco Union's contract with Phase One Capitol (which will be discussed below).

There are also no facts pled, as opposed to conclusions drawn, which suggest that had Meador not posted or published the comments that are attributed to her in paragraph 2 of the Complaint, that Indeco Union would have raised $3,000,000 from the STO which it had only planned and not even implemented. Nor are there facts to suggest that absent Meador's comments, which are primarily directed at Levine, that Indeco Union would have been reasonably certain to raise $3,000,000 from its "planned" STO.

To the extent that the tortious interference claim is premised on Phase One Capitol's cancellation of the contract with Indeco Union, the Complaint suffers from similar defects. Although Indeco Union has pled that Meador had knowledge of the contract, part of the first element of a claim, it has set forth no facts to suggest a probability that the contract would continue into the future to Indeco Union's benefit. Mere proof of a plaintiff's belief and hope that a business relationship will continue is inadequate to sustain a claim for tortious interference. *Commercial Bus. Sys. v. Halifax Corp.*, 253 Va. 292, 301, 484 S.E.2d 892

(1997). Indeco Union has also not pled facts to suggest that anything Meador may have done caused the termination of that contract. Speculating that is what occurred is not sufficient to state a tortious interference claim. Indeco Union would actually have to come forward with facts to support its conclusion. Finally, the only damages which Indeco Union asserts stem from the planned STO, by which Indeco Union claims it hoped to raise $3,000,000. Indeco Union does not identify any damages it allegedly suffered by virtue of the cancellation of its contract with Phase One Capital. Simply put, Indeco Union has not stated a claim for tortious interference with business expectancy or contract, and the claim should be dismissed.

## I.     Plaintiffs are not entitled to injunctive relief

The Fourth Circuit recognizes that "federal injunctive relief is an extreme remedy." *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995). To obtain such an injunction, a plaintiff must show (1) irreparable injury, (2) remedies at law "are inadequate to compensate for that injury," (3) "the balance of hardships between the plaintiff and defendant" warrants a remedy, and (4) an injunction would not disserve the public interest. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57, 130 S. Ct. 2743, 177 L. Ed. 2d 461 (2010).

As set forth above, repeatedly, the court should not entertain any claim by either plaintiff. However, should the court disagree, Meador submits that an injunction is not proper under the facts of this case. Should the case proceed and there be a finding that Meador defamed either plaintiff by statements which she purportedly made, which she steadfastly denies, plaintiffs have requested money damages. That evidences a recognition by them that there is an adequate remedy at law. As such, plaintiffs cannot establish the necessary elements to obtain federal injunctive relief, a drastic remedy.

## III.    CONCLUSION

WHEREFORE, considering the above, for any reasons set forth in reply to any opposition filed by plaintiffs, and for any reasons which may be argued at a hearing on her motion, Anne M. Meador, by counsel, respectfully requests that the court grant her motion to dismiss and dismiss all claims against her with prejudice.

Respectfully submitted,
**Anne M. Meador**
**By Counsel**

_____/s/_____
Heather K. Bardot, Esquire
VSB No. 37269
BANCROFT, McGAVIN, HORVATH & JUDKINS
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
Telephone:    (703) 385-1000
Facsimile:     (703) 385-1555
hbardot@bmhjlaw.com
_Counsel for Defendant_

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of January, 2021, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Steven S. Biss, Esquire
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:     (804) 501-8272
Facsimile:     (202) 318-4098
Email:          stevenbiss@earthlink.net
Counsel for Plaintiff

_____/s/_____
Heather K. Bardot
VSB No. 37269
BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
(703) 385-1000 (telephone)
(703) 385-1555 (facsimile)
Hbardot@bmhjlaw.com
*Counsel for Defendant*