# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

DAVID LEVINE,                          )
                                       )
      Plaintiff,                    )
                                       )
        v.                      )   Civil Action No. 1:20-cv-1073 (TSE/TCB)
                                       )
ANNE M. MEADOR, *et al.*,              )
                                       )
      Defendants.                   )
_____        )

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant Anne M. Meador's ("Defendant" or "Meador") Motion to Dismiss.[1] (Dkt. 7.) This Report and Recommendation addresses the remaining, unresolved claims of Plaintiff David A. Levine against Meador. (*See* dkt. 34.) Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned U.S. Magistrate Judge recommends that Defendant's Motion to Dismiss be granted in part and denied in part.

## I. PROCEDURAL BACKGROUND

Plaintiffs Indeco Union ("Indeco") and David A. Levine ("Levine" or "Plaintiff") filed this lawsuit against Defendant on September 11, 2020 for defamation *per se* (Count I), insulting words (Count II), conspiracy (Count III), tortious interference (Count IV), and injunctive relief (Count V). (Dkt. 1.) On January 1, 2021, Defendant moved to dismiss the complaint in its entirety on for

---

1. Relevant filings before the Court include the Complaint (Dkt. 1) ("Compl."); Defendant's Motion to Dismiss (Dkt. 7) ("Mot. to Dismiss"); Defendant's Memorandum of Law in Support of Motion to Dismiss (Dkt. 8) ("Mem. Supp."); Plaintiff David A. Levine's Memorandum in Opposition to Defendant's Motion to Dismiss (Dkt. 11) ("Opp."); and Defendant's Memorandum in Response to David A. Levine's Opposition to Defendant's Motion to Dismiss (Dkt. 17) ("Reply").

lack of subject-matter jurisdiction and for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1),(6). Mr. Levine filed his opposition on January 25, 2021, and that same day, Indeco filed a Notice of Voluntary Dismissal (As to Indeco Only). (Dkts. 10, 11.) The Honorable District Judge T.S. Ellis, III granted Indeco's Notice the next day. (Dkt. 12.) Less than a week later, on January 31, 2021, Defendant filed a Motion to Reconsider/Vacate Court's [ECF No. 12] because Indeco's attorney lacked authority to act on the company's behalf. (Dkt. 14.)

After a hearing on both Defendant's motion to dismiss and motion to vacate/reconsider on February 10, 2021, Judge Ellis issued two orders. First, Judge Ellis took the motion to dismiss under advisement. (Dkt. 19.) Second, Judge Ellis found that his earlier order "must be vacated because the trustees appointed in Indeco Union and David Levine's respective bankruptcy proceedings have not had an opportunity to take a position on whether either Plaintiff must be dismissed from this action, and if so, whether such dismissal must be with or without prejudice." (Dkt. 20.) He further ordered the trustees appointed for both Indeco and Mr. Levine, respectively, to file a reply brief to the order by February 24, 2021. (*Id.*)

The trustees filed timely reply briefs. (Dkts. 21, 22.) Trustee Thomas H. Fluharty for Levine took the position that Fluharty, as trustee, does not control the post-petition claims in this suit. (Dkt. 21.) Trustee Janet Smith Holbrook for Indeco requested extra time to evaluate whether Indeco should be dismissed because she previously was not informed of the suit. (Dkt. 22.) Meador filed a reply to the trustees' responses, requesting that the Court issue Rule 11 sanctions against Biss for filing the voluntary dismissal without authority.[2] (Dkt. 23.) Judge Ellis referred the motion to dismiss and motion for sanctions to the undersigned United States Magistrate Judge. (Dkt. 24.)

---

[2] The undersigned will address this motion for sanctions in a separate Report and Recommendation.

After two status reports requesting extensions of time, Judge Ellis stayed the case on July 19, 2021, pending a decision from the Bankruptcy Court as to whether Biss may serve as special counsel for Indeco Union. (Dkt. 29.)

On January 5, 2022, Defendant filed a Notice to Court and Motion to Reopen. (Dkt. 30.) On January 28, 2022, Judge Ellis granted the Motion, dismissing Indeco Union from the case with prejudice, lifting the stay, and stating that the Court should rule upon motion to dismiss as to the unresolved claims of Plaintiff Levine. (Dkt. 34.) Accordingly, the undersigned will address the remaining Rule 12(b)(6) challenge to Plaintiff Levine's claims against Meador.

## II. STATEMENT OF FACTS

The Court accepts as true a plaintiff's well-pleaded allegations and draws all reasonable inferences in the light most favorable to him, as provided by Federal Civil Rule 12(b)(6). *See T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The Court's analysis at this stage is informed and constrained by the four corners of the complaint. *See CACI Int'l, Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). However, the Court may also consider documents attached or incorporated into the complaint, *see E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 448 (4th Cir. 2011), as well as those documents attached to a motion to dismiss, *see Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006) (finding that the court could consider a newspaper article, which was not attached to the plaintiff's complaint, at the 12(b)(6) stage because "(1) it was attached to [defendant's] motion to dismiss, and is clearly integral to, and was relied upon in, [plaintiff's] complaint; and (2) [plaintiff] does not dispute its authenticity" (citations omitted)).

3

Therefore, upon a review of the pleadings in this case, the undersigned makes the following relevant findings of fact.

This dispute arises from the alleged fallout from the personal and business relationship between Plaintiff Levine and Defendant Meador. Plaintiff is a citizen of West Virginia and served as CEO of Indeco Union during the relevant period. (Compl. ¶¶ 3, 5.) Indeco Union is a Delaware public benefit corporation with its principal place of business in McLean, Virginia. (Compl. ¶ 5.) Meador is a citizen of Maryland who owns real estate and conducts business in Virginia. (Compl. ¶ 6.) Levine is also a journalist who edits and publishes the progressive blog DC Media Group. (Compl. ¶ 6.) Levine is a social impact entrepreneur who at the relevant time was working to oppose a factory of the Danish conglomerate Rockwool. (Compl. ¶ 6.) Levine published an article in *Forbes* exposing the corruption of the factory development project. (Compl. ¶ 6.)

Daniel M. Casto ("Casto") and Jefferson County Perspective, Inc. f/k/a Jefferson County Prosperity, Inc. ("JCP"), are non-parties named in the Complaint.[3] (*See* Compl. ¶¶ 7, 8.) JCP is a West Virginia 501(c)(4) non-profit corporation, and Casto is or was president of JCP. (Compl. ¶ 7.) Casto founded JCP to promote the Rockwool factory. (Compl. ¶ 7.) Casto was formerly general counsel and Vice President of Finance for Indeco and acquired confidential information about the company during his employment. (Compl. ¶ 7.)

Meador met Levine in September 2018 when she was covering a story involving him. (Compl. ¶ 6.) Meador believed in the mission of Levine's work and offered to invest her inheritance to his documentary, Rockwool litigation, and entrepreneurial ventures. (Compl. ¶ 6.)

---

[3] Levine alleges that Casto and JCP made defamatory statements targeting Levine and conspired with Meador to amplify the defamation. (Compl. ¶ 25.) Because Casto and JCP are not named as parties, the undersigned does not evaluate the defamation claims against them. But these non-parties are relevant to Count III, common law civil conspiracy.

In addition to their business relationship, Levine and Meador initiated a romantic relationship, which Levine alleges that Meador conditioned her financial support on this relationship. (Compl. ¶ 6.) Meador leveraged her financial power as an investor over Levine during their affair. (Compl. ¶ 6.) Levine was married during this relationship, and Meador insisted that Levine divorce his wife for her, but he refused. (Compl. ¶ 6.)

On February 7, 2020, Meador emailed Levine an "ultimatum," requesting to speak in person about their affair. (Compl. ¶ 6.)  Levine declined, and the two eventually broke up. (*Id.*) After their relationship concluded around March 2020, Meador made a series of statements about Levine and Indeco. (Compl. ¶ 2; *see* Table 1, *infra*.)  Meador enlisted Casto to amplify her campaign against Levine with the goal of blackmailing Levine and Indeco into returning Meador's $394,000 investment in the company. (Compl. ¶ 7.) Meador provided Casto with her March 26, 2020 letter to the Indeco Board, recordings between Levine and his lawyers, and a police report accusing Levine of theft. (Compl. ¶ 7.) Casto, as owner and operator of JCP's Facebook page, published a series of Facebook posts about Levine's purported financial wrongdoing and affair with Meador. (*See* Compl. at 5-8.) Casto also republished Meador's letter to the Indeco Board. (Compl. ¶ 6.) Indeco's independent directors resigned after reading the statements about Levine and Indeco. (Compl. ¶ 3.) Board member Robert Whetsel resigned because he believed that the attacks on Levine and Indeco were harming the business's business prospects. (Compl. ¶ 7.) As a result, Indeco's value and reputation diminished. (Compl. ¶ 3.) The company also lost Phase One Capital as its investment banker and a planned securities token offering. (Compl. ¶ 3.)

December 13, 2019 Levine and his wife filed a personal chapter 13 bankruptcy petition. (Mem. Supp., Ex. 4 at 2.) On February 26, 2020, the bankruptcy was converted to Chapter 7 proceeding. (Mem. Supp., Ex. 4 at 8.) Meador filed an affidavit in Levine's bankruptcy on April

16, 2020. (Compl. ¶ 6, Mem. Supp., Ex. 4 at 10.) After Meador's alleged statements, Levine filed

amended asset schedules to bankruptcy court on October 28, 2020. (Mem. Supp., Ex. 4 at 17.)

Table 1: Meador's Defamatory Statements

| No. | Defamatory Statement | Published By | Published To | Date |
|---|---|---|---|---|
| 1 | "I would like the Board to know that my investment--the one that has likely made Indeco's 'reboot' possible--is tainted by deceit and manipulation … The decisions I made to disburse significant amounts of money [to Indeco] were influenced by David's repeated statements and promises over 7 ½ months that he would end his marriage and leave his wife for me" | Meador | Indeco Board, Phase One Capital | 03/26/2020 |
| 2 | "I will hold David accountable for egregiously unethical and possibly fraudulent behavior. This isn't just a personal matter: I believe the Board should be very alarmed by David's conduct and how it might have already impacted Indeco" | Meador | Indeco Board, Phase One Capital | 03/26/2020 |
| 3 | "David kept stringing me along to gratify his emotional and sexual needs and pulled a confidence trick on me to grift my money for the STO. And this is where what I am describing becomes not only a matter of personal cruelty and exploitation, but one of manipulation and fraud relevant to Indeco. David consciously chose to employ extreme methods of deception and manipulation to maintain my trust and secure my investment in Indeco" | Meador | Indeco Board, Phase One Capital | 03/26/2020 |
| 4 | "David was very anxious for the funds from my IRA to be wired to the Indeco account. He spent an entire hour with me on Zoom making sure the Promissory Note was filled out correctly on Adobe Acrobat.  He told me that Desmoine really needed the money to be there right away for the STO to get started … With the funds in Indeco's bank account, the ruse that David loved me and intended to share a life with me could be dispensed with" | Meador | Indeco Board, Phase One Capital | 03/26/2020 |

| 5 | "David manipulated me not only to satisfy his emotional needs and sexual gratification (which is repulsive), but that he consciously, coldly and calculatedly embarked on a plan of deception to manipulate me into investing very large sums of money in Indeco. David is not merely a cad but a con artist. This fraudulent, unethical behavior on the part of Indeco's CEO is very much the Board's business" | Meador | Indeco Board, Phase One Capital | 03/26/2020 |
|---|---|---|---|---|
| 6 | "I have uploaded a list of unauthorized transactions and cash withdrawals David made from my business bank account … I've just emailed the bank manager to get more information about how transfers from my business were made and their origination (IP address) and how David was able to make cash withdrawals from it" | Meador (a/k/a "Cool Revolution") | "Freki" via Keybase | 04/03/2020 |
| 7 | "I've got some very serious allegations to add – will be uploading soon … in a nutshell – David has been taking money from Indeco so ThreeSquare can pay its bills … He took all this money from my account the Truthtellers without my knowledge and transferred it to Indeco [and then to ThreeSquare] … This explains everything about ThreeSquare and David's use of Indeco funds to finance it" | Meador (a/k/a "Cool Revolution") | "Freki" via Keybase | 04/05/2020 |
| 8 | "I suspect that the expenditures will be shocking" | Meador (a/k/a "Cool Revolution") | "Freki" via Keybase | 04/12/2020 |
| 9 | "Levine is CEO of Indeco Union. I made an investment in Indeco Union … On March 9, immediately after he acknowledged receipt of funds, Levine sent an email to his attorneys [that] informed them that Indeco Union would from that day forward pay his legal fees in the lawsuit David A. Levine v. Rockwool" * Meador's statements were republished by JCP on April 14, 2020 and again on April 16, 2020 on Facebook | Meador | Clerk of Court, Facebook and JCP | 04/14/2020 |
| 15 | "I have been in touch with other Indeco Union investors who are also concerned about David's misuse of investor funds. Individual Board Directors are accountable for David's actions" | Meador | Robert Whetsel | 05/07/2020 |

| 16 | "David is using you. He's racing through his bankruptcies. If they're settled, he'll be able to take the money raised by an STO and live well, defend himself from any legal action and move on to the next start-up. He's not interested in making returns for investors ... David defrauded me and fired me. David is a crook with no conscience. Don't ever forget it". | Meador | Robert Whetsel | 05/08/2020 |
|----|----|----|----|----|
| 23 | "David Andrew Levine made the following transfers from the bank of [sic] account of The Truth Tellers, LLC, without authority to do so, and converted such funds to his own personal use in violation of the fiduciary duties attendant his position of special trust within The Truth Tellers, LLC ... Seems like the Bernie Madoff of Shepherdstown ... A lot of what David Levine has done seems criminal" | Meador/JCP | Facebook | 09/09/2020 |

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555. "Detailed factual allegations" are not required, but a plaintiff must provide more than mere conclusions that the plaintiff is entitled to relief. *Id.*

A Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, so a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *Kolon*, 637 F.3d at 440). A claim is facially plausible when "the plaintiff pleads factual content that allows the court

8

to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Accordingly, a
complaint may survive a motion to dismiss "even if it appears 'that a recovery is very remote and
unlikely,'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)), so
long as the complaint states a claim that is "plausible" and not merely "conceivable." *id.* at 570.

## IV. ANALYSIS

Defendant's Motion argues that Plaintiff's claims are barred under the doctrine of judicial
estoppel and Plaintiff's Complaint failed to state a claim for defamation *per se* (Count I),
insulting words (Count II), conspiracy under Virginia common law (Count III), tortious
interference with contract (Count IV), and injunctive relief (Count V). The undersigned will
address each argument in turn.

### A.        **Judicial Estoppel**

Defendant argues that Plaintiff Levine's claims are barred by judicial estoppel because
Levine failed to disclose the suit as an asset in his amended bankruptcy schedule. "Judicial
estoppel precludes a party from adopting a position that is inconsistent with a stance taken in
prior litigation." *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk
Assurance Co., Inc.*, 867 F.3d 449, 457 (4th Cir. 2017) (quoting *John S. Clark Co. v. Faggert &
Frieden, P.C.*, 65 F.3d 26, 28 (4th Cir. 1995)). The doctrine aims to protect judicial integrity and
prevent litigants from "playing fast and loose with the courts" but must be wielded with caution.
*Id.* The Fourth Circuit requires a court to satisfy four elements before applying the doctrine:

> (1) "the party sought to be estopped must be seeking to adopt a
> position that is inconsistent with a stance taken in prior litigation;"
> (2) "the position sought to be estopped must be one of fact rather
> than law or legal theory;" (3) "the prior inconsistent position must

have been accepted by the court;" and (4) "the party sought to be estopped must have intentionally misled the court to gain unfair advantage."

*Id.* (quoting *Lowery v. Stovall*, 92 F.3d 219, 223–24 (4th Cir. 1996)). As relevant here, "[j]udicial estoppel has often been applied to bar a civil lawsuit brought by a plaintiff who concealed the existence of the legal claim from creditors by omitting the lawsuit from his bankruptcy petition." *Watson v. HomeBridge Financial Servs., Inc.*, 2022 WL 125278 (D. Md. Jan. 13, 2022) (quoting *Whitten v. Fred's Inc.,* 601 F. 3d 231, 241 (4th Cir. 2010), abrogated on other grounds by *Vance v. Ball State Univ.*, 570 U.S. 421 (2013)).

**(1)   Bankruptcy Law**

This analysis requires a brief overview of bankruptcy law. The Bankruptcy Code provides debtors with multiple options to discharge their financial obligations and to elect to pursue, *inter alia*, Chapter 13 or 7 proceedings. *Harris v. Viegelahn*, 575 U.S. 510, 513 (2015).

In a Chapter 13 bankruptcy proceeding, a debtor proposes, and the bankruptcy court may confirm, a plan to repay debts. *Id.* at 514 (citing §§ 1306(b), 1322, 1327(b)). Debtors usually repay these debts with "future earnings or other future income" over a three to five-year period, so the debtor may retain assets like their home or vehicle. *Id.* (citing § 1322(a)(1); 8 Collier on Bankruptcy ¶ 1322.02 [1] (A. Resnick & H. Sommer eds., 16th ed. 2014)). Because of this multi-year process, the Chapter 13 estate may include property acquired by the debtor post-petition. *Id.* (citing § 1306(a)). Chapter 7, however, involves "prompt liquidation of the debtor's assets." *Id.* at 513. Upon filing, the debtor's non-exempt assets are immediately transferred to the bankruptcy estate. *Id.* at (citing § 541(a)(1)). The Chapter 7 estate does not include post-petition property, and this shielding function of Chapter 7 is a major benefit of electing this proceeding. *Id.* at 513-14 (citing  § 541(a)(1)).

10

A debtor may convert a proceeding in Chapter 13 to Chapter 7 "at any time" by filing notice with the bankruptcy court. *Id.* (quoting §1307(a)) (citing Fed. R. Bankr. P. 1017(f)(3)). Conversion allows the debtor to proceed under Chapter 7 while maintaining the Chapter 13 petition filing date, continuing as if the debtor originally filed a Chapter 7 petition. *Id.* at 515 (quoting § 348(a)).

Bankruptcy procedure requires debtors to include schedules detailing their assets and liabilities upon filing their petition. 11 U.S.C. § 521(1). Debtors retain an ongoing duty to file updated schedules throughout the proceeding. See Fed. R. Bankr. 1007(h); § 541(a)(5); *Casto v. Am. Union Boiler Co. of West Va.*, No. 2:05-cv-757, 2006 U.S. Dist. LEXIS 14781, 2006 WL 660458, * 2 (S.D.W. Va. March 14, 2006). After converting, the Chapter 13 schedule is deemed filed in the Chapter 7 proceeding. Fed. R. Bankr. P. 1007(c). But a debtor may refile and amend the schedules at any time. Fed. R. Bankr. P. 1009(a); *see In re Padula*, 542 B.R. 753, 759 (Bankr. E.D. Va. April 28, 2015)*, subsequently aff'd*, 651 F. App'x 228 (4th Cir. 2016).

Assets and liabilities included in these schedules include "all legal or equitable interests of the debtor in property as of the **commencement** of the case." 11 U.S.C. § 541(a)(1) (emphasis added). The Fourth Circuit has recognized exceptions to this rule, namely that "'[a]ny interest in property that the estate acquires after the commencement of the case' can become part of the estate post-petition." *Id.* (quoting 11 U.S.C. § 541(a)(7)). But section 1306 limits this exception and expands on the definition of "property of the estate" from section 541: "all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is **closed, dismissed, or converted** to a case under chapter 7, 11, or 12 of this title, whichever occurs first . . . ." 11 U.S.C. § 1306(a)(1) (emphasis added).

11

Once a debtor converts from a Chapter 13 case to a Chapter 7 proceeding, the assets and liabilities are defined by that "property of the estate, as of the date of the filing of the petition, that remains in the possession or is under the control of the debtor as of the date of conversion." 11 U.S.C. § 348(f)(1)(A); *Thomas*, 193 F. Supp. 3d at 639-40. Therefore, the bankruptcy property is limited to those assets disclosed in the Chapter 13 petition absent a finding of bad faith. *Thomas*, 193 F. Supp. 3d at 640. Notwithstanding bad faith conversion, any assets acquired post-conversion are not estate property. *See* § 1306(a)(1); *Lowe v. Wells Fargo Bank, N.A.*, *report and recommendation adopted*, 2018 WL 3748418 *6 (E.D. Va. July 9, 2018) (citing *Carroll v. Logan*, 735 F. 3d 147, 151-52 (4th Cir. 2013) (internal citations omitted)). The property of the estate will consist of the debtor's property as of the date of conversion only when the debtor converts the proceeding in bad faith. § 348(f)(2); *see id.*

**(2)    Analysis**

With this bankruptcy framework in mind, the undersigned returns to the parties' judicial estoppel arguments. Defendant Meador argues that Plaintiff Levine failed to disclose the lawsuit against Meador in his October 28, 2020 Amended Disclosure. (Mem. Supp. at 11-12, Ex. 5.) In this schedule, Levine was asked to disclose "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims." (Mem. Supp. 11, Ex. 5. at 7 ¶ 34.)

As to the first element of judicial estoppel, Defendant argues that Levine's failure to disclose the claims in this case on his amended schedule amounted to adopting an inconsistent position. (Mem. Supp. at 13.) However, Levine had no duty to disclose these post-petition, post-conversion claims as a bankruptcy asset in the initial Chapter 13 proceeding. Levine filed his Chapter 13 bankruptcy petition on December 13, 2019. (Mem. Supp., Ex. 4 at 2.) Levine

12

converted the Chapter 13 proceeding to a case under Chapter 7 on February 26, 2020. (Mem. Supp., Ex. 4 at 8.) Defendant's statements central to this suit began in March 2020. (*See* Compl. at 2-8.)

This timeline shows that the relevant claims accrued after Levine filed his Chapter 13 petition and after that proceeding was converted to a Chapter 7 bankruptcy. Therefore, Levine's post-conversion claims underlying this suit are not assets of the bankruptcy estate. *See* 11 U.S.C. § 1306(a)(1); *Lowe*, 2018 WL 3748418 at *6. Levine's bankruptcy trustee Thomas H. Fluharty has taken the position that he does not control these post-petition claims. (Dkt. 21.)

Defendant does not argue that Levine converted in bad faith; therefore, the commencement of the Chapter 13 proceeding defines the scope of the Chapter 7 property rather than the date of conversion. But even if Defendant alleged evidence of a bad faith conversion, the scope of the bankruptcy estate would consist of the property acquired as of February 26, 2020, which before the alleged defamation began. Accordingly, because the claims underlying this suit emerged post-petition, they are outside of the pool of property governed by the bankruptcy proceeding, and Levine had no duty to disclose the suit against Meador as an asset. *See id.*

It follows that judicial estoppel is inappropriate in this case. Levine did not take an inconsistent position in omitting this non-asset lawsuit from his disclosures because disclosure of non-bankruptcy property was not required. *See Thomas*, 193 F. Supp. 3d at 640-41. Because Levine had no duty to disclose this property, he did not act in bad faith by omitting the suit from his disclosure. *Id.* (reasoning that where there is no duty, there is necessarily no bad faith). Accordingly, the undersigned recommends that the Court deny the Motion to Dismiss as to judicial estoppel.

13

**B.**     **Count I: Defamation *per se***

Defendant argues that Plaintiff failed to state a claim for defamation *per se*. Under

Virginia law a Plaintiff asserting defamation must allege facts to support "(1) the publication of

(2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 737

S.E.2d 890, 892 (2013); *see also Chapin v. Knight-Ridder, Inc.* 993 F.2d 1087, 1092 (4th Cir.

1993). "Defamation must be pled with particularity under Virginia law. . . . However, when a

state claim is brought in federal court, a plaintiff need not satisfy the state's heightened pleading

requirements to survive a Rule 12(b)(6) motion; the Federal Rules of Civil Procedure govern this

pleading." *Steele v. Goodman*, 382 F. Supp. 3d 403, 421 n. 55 (E.D. Va. Mar. 31, 2019) (quoting

*Skillstorm, Inc. v. Electronic Data Sys., LLC*, 666 F. Supp. 2d 610, 619 n.1 (E.D. Va. Oct. 9,

2009)).

    **(1)**     **Publication**

Here, Defendant does not contest publication. *See Steele*, 382 F.Supp.3d at n. 51.

Publication exists where the defendant transmitted "an actionable statement . . . to some third

person so as to be heard and understood by such person." *Id.* at 419 (E.D. Va. Mar. 31, 2019)

(quoting *Thalhimer Bros. v. Shaw*, 156 Va. 863, 159 S.E. 87, 90 (1931)) (citations omitted).

Plaintiff's Complaint alleges that Defendant transmitted these statements to third parties. *See*

Table I, *supra*. Accordingly, the undersigned finds that Plaintiff sufficiently plead facts to

support the publication element.

    **(2)**     **Actionable Statements**

Defendant argues that Plaintiff pled non-actionable statements because they are mere

opinion and are outside of the defamation *per se* categorizations. (Mem. Supp. at 15-19.)

Actionable "statement[s] must be both false and defamatory." *Jordan v. Kollman*, 269 Va. 569,

575, 612 S.E.2d 203, 206 (2015); *Chapin*, 993 F.2d at 1092. At the 12(b)(6) stage, Virginia

courts presume the falsity of defamatory statements alleged in the Complaint. *Lokhova v. Halper*,

995 F. 3d 134 (4th Cir. 2021) (quoting *Chapin*, 993 F.2d at 1092) (citations omitted).

Accordingly, the undersigned will evaluate whether the alleged statements are mere opinion, and

if not, whether these statements are defamatory.

      (a)    *Levine's statements are not protected opinion*

      The First Amendment protects speech that "cannot reasonably be interpreted as stating

actual facts about an individual." *Steele*, 382 F. Supp. 3d at 419 (quoting *Milkovich v. Lorain

Journal, Co.*, 497 U.S. 1, 20, 110 S. Ct. 2695 (1990) (citations omitted)). For this reason, "[p]ure

expressions of opinion" cannot support a defamation claim unless they amount to "fighting

words." *Steele*, 382 F. Supp. 3d at 419 (quoting *Chaves v. Johnson,* 230 Va. 112, 119, 335

S.E.2d 97, 101 (1985)).

      Speech that includes a "provably false factual connotation" is not a pure expression of

opinion and may be actionable. *Id.* (quoting *Besen v. Parents and Friends of Ex-Gays, Inc.*, 2012

WL 1140183 at *3 (E.D. Va. April 25, 2012)) (citations omitted). Speech may be opinion if it is

"relative in nature and depend[s] largely on the speaker's viewpoint." *Id.* (quoting *Jordan*, 612

S.E. 2d at 206)). However, opinion may be actionable if the speaker pairs it "with a clear but

false implication that the [speaker] is privy to facts about the person that are unknown to the

general [listener]." *Id.* (quoting *Baylor v. Comprehensive Pain Mgmt. Ctrs., Inc.*, 2011 WL

1327396, at *11 (W.D. Va. April 6, 2011)).

      Courts ask whether a reasonable listener would take the speaker to be basing his [or her]

'opinion' on knowledge of facts of the sort that can be evaluated in a defamation suit.  *Id.*

(quoting *Baylor v. Comprehensive Pain Mgmt. Ctrs., Inc.*, 2011 WL 1327396, at *11 (W.D. Va.

April 6, 2011)). In evaluating a statement's factual content, "the Fourth Circuit directs courts to look to the actual language used, as well as the context and general tenor of the statement." *Id.* (quoting *Biospherics, Inv. v. Forbes. Inc.*, 151 F.3d 180, 184 (4th Cir. 1998)). The Fourth Circuit and Supreme Court of Virginia also require courts to consider the context of a statement when evaluating whether it is fact or opinion. *Id.* (citing *Snyder v. Phelps*, 580 F.3d 206, 219-20 (4th Cir. 2009); *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40. 670 S.E.2d 746, 751 (2009)).

Here, Plaintiff's Complaint alleges twelve statements by Meador that defame Levine. Meador argues that Comments 1, 3, 4, 5, 8, and 16 are not actionable because they are based on Meador's viewpoint or opinion and are "relative in nature." (Mem. Supp. at 18.)

*First*, Meador published Statements 1-5 to the Indeco Board and Phase One Capital on March 26, 2020. *See* Table 1, *supra*. Meador's statements accuse Levine of manipulating her into investing in Indeco in exchange for a romantic relationship. Meador's statements include her opinion that Levine is a fraud, but her opinion is paired with factual allegations that may be proven true or false. *See Steele*, 382 F. Supp. 3d at 419. These facts include whether Levine promised to leave his wife and whether these promises induced Meador's investment. *See* Table 1, *supra*. Accordingly, these statements are sufficiently factual to be actionable non-opinion.

*Second*, Meador published Statements 6-8 under the name "Cool Revolution" on the messaging and file-sharing site Keybase to a third-party user named "Freki." *See* Table 1, *supra*. Statements 6 and 7 contain factual allegations that may be proven false. Specifically, Meador states that Levine made unauthorized withdrawals from Indeco and from her accounts for his own personal use. In isolation, Statement 8, "I suspect that the expenditures will be shocking," may be viewed as mere opinion; however, viewed in the context of the other Keybase messages, implies that Meador is privy to facts that may be proven wrong about how Levine is

appropriating this money. Accordingly, the undersigned finds that these statements are actionable non-opinion.

*Third*, Meador published Statements 15 and 16 to Robert Whetsel on May 7 and 8, 2020. *See* Table 1, *supra*. Meador states in Statement 15 that Levine is misusing investor funds and investors are concerned about this misuse. Statement 16 states that David is a "crook with no conscience," which is an opinion, but Meador also states that Levine "is using you," "is racing through bankruptcies," is "not interested in making returns for investors," and "defrauded me and fired me." Table 1, *supra*. Meador's statement of opinion includes factual content that may be proven true of false. Accordingly, the undersigned finds that these statements are actionable.

*Finally*, Defendant's Motion relies on a Virginia circuit court case to argue that these statements are non-actionable opinion. *Owens v. DRS Auto. Fantomworks, Inc.*, 87 Va. Cir. 30 (Cir. Ct. 2013). In *Owens*, the court granted Defendant's demurrer where the defamatory statements were not pled with sufficient specificity. The plaintiff did not include direct quotes. The court proceeded to find that, even if the statements had been sufficiently pled, they were nevertheless mere expressions of opinion. Here, unlike in *Owens*, Plaintiff pled Meador's statements as direct quotes, and included substantive facts rather than conclusions of fraud. It is more than Meador's viewpoint that Levine is a fraud; instead, her statements include information about how Levine perpetrated such fraud. Whether Levine defrauded Meador is a factual assertion that may be proven true or false and is more than mere name-calling without additional facts.

Overall, taking Meador's statements in their context, the undersigned finds that Plaintiff's allegations are factual, non-opinion assertions.

*(b) Levine's statements qualify as defamation per se*

The question remains whether Levine's alleged statements are defamatory. Defendant argues that Comments 1, 3, 4, 5, 8, 9, and 16 do not qualify as defamation *per se* under Virginia law. (Mem. Supp. at 18.) Whether a statement is defamatory is a question of law. *Chapin*, 993 F.2d at 1092. Defamatory statements "harm the reputation of another as to lower [her or] him in the estimation of the community or to deter third persons from associating or dealing with [her or] him." *Steele*, 382 F. Supp. 3d at 418-19 (quoting *Cook, Heyward, Lee, Hopper, & Feehan, P.C. v. Trump Va. Acquisitions LLC, No.*, 3:12-cv-131, 2012 WL 1898616 at * 3 (E.D. Va. May 23, 2012) (citing *Chapin*, 993 F.2d at 1092)). Under Virginia common law, defamation *per se* may include:

> (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished.
> . . .
>
> (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment.
>
> (4) Those which prejudice such person in his or her profession or trade.

*Tronfield v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 636 S.E.2d 447 (2006) (quoting *Fleming v. Moore*, 221 Va. 884, 889, 275 S.E.2d 632, 635 (1981)) (citations omitted).

Here, Plaintiff's Complaint alleges that Defendant defamed him by publishing statements implying that Levine committed serious crimes, expressing that he is unfit for office of employment and prejudicing Levine in trade and business. (Compl. ¶ 14.); *see id.* Defendant Meador struggles to articulate why Plaintiff's Complaint fails to plausibly state a defamation claim. Defendant contests only seven of the twelve statements regarding Levine, Comments 1, 3,

18

4, 5, 8, 9, and 16. (*See* Mem. Supp. at 18-19.)

Defendant argues "to the extent that the statements set forth in paragraph 2 of the Complaint are sufficient to state a claim for defamation *per se* against Meador, she submits that, for the most part, they are not." (Mem. Supp. at 18.) In other words, Meador admits that they are somewhat sufficient to support a defamation claim. Defendant thereby implies that Plaintiff has pled enough facts to survive this motion to dismiss. Further, Defendant's challenges to the sufficiency of these statements are conclusory at best. The undersigned will evaluate the challenged statements alleged to determine whether they qualify as defamation *per se* under Virginia law. *See* Table 1, *supra*.

*First*, Statements 1-5 published by Meador to the Indeco Board, state that Levine deceived and manipulated her into investing in Indeco by promising he would leave his wife. *See* Table 1, *supra*. Levine's Complaint claims that these statements are defamatory because they "impute to Levine unfitness for an office of employment, dishonesty, unethical behavior and immorality." (Compl. ¶ 14.) Defendant argues that "to the extent that Meador is alleged to have accused Levine of egregiously unethical and possibly fraudulent behavior" these statements are opinion. (Mem. Supp. at 18.)  As discussed above, these statements are not opinion and contain sufficient factual material to be actionable. Therefore, Defendant's barebones challenge to the sufficiency of these statements must fail. Statements 1-5 fit within at least two of the defamation *per se* categories, unfitness for employment and criminal behavior.

*Second*, Meador published Statement 8 to "Freki" via Keybase, which states "I suspect that the expenditures will be shocking." *See* Table 1, *supra*. This statement, when viewed in the context of Statements 6 and 7, implies that Levine will be making shocking expenditures with Indeco's funds. This statement also "impute[s] to Levine unfitness for an office of employment,

19

dishonesty, unethical behavior and immorality" and therefore may be characterized as

defamation *per se*. (Compl. ¶ 14); *Tronfield v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 636

S.E.2d 447 (2006).

    *Finally*, Defendant Meador challenges Statement 16 as insufficiently defamatory "for the

same reasons as Comment 1." (Mem. Supp. at 18.) Therefore, because Defendant's challenge

Statement 1 failed so must the challenge to Statement 16. Statement 16 accuses Levine of

"racing through bankruptcies," violating his duties to investors, and defrauding Meador. As

alleged in the Complaint, this statement "impute[s] to Levine unfitness for an office of

employment, dishonesty, unethical behavior and immorality." (Compl. ¶ 14.) Therefore,

Statement 16 survives Defendant's challenge, as it is defamatory *per se*.

    Accordingly, drawing all proper inferences in his favor, the undersigned finds that Levine

has pled several actionable statements against Meador.

    **(3)   Intent**

    The applicable standard of defamatory intent depends upon whether the Plaintiff is a

public or a private figure. *See New York Times v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710 (1964).

Defendant takes no position as to whether Plaintiff is a private or public figure under *New York

Times*. *Id.* Plaintiff seems to agree with this assessment. The undersigned therefore presumes that

Plaintiff is a private figure. *See Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1553 (4th

Cir. 1994) (proceeding "upon the initial presumption that the defamation plaintiff is a private

individual, subject to the defendant's burden of proving that the plaintiff is a public figure").

    Presuming that Plaintiff is a private figure, the Complaint must allege facts that

Defendant knew the statements were false and acted negligently in making these statements

without ascertaining the relevant facts. *See Foretich*, 37 F.3d at 1552 (citing *Gazette, Inc. v.*

*Harris*, 229 Va. 1, 15, 325 S.E.2d 713 (1985) (citations omitted)). The Complaint alleges that

Defendant made these false statements with actual knowledge of their falsity. (*See* Compl. ¶ 17.)

Defendant signed documents representing that her investment in Indeco was not based on any

unwritten promises by anyone, such as Levine. (Compl. ¶ 17, a.) The Complaint further alleges

that Defendant acted with actual malice because she published these statements while possessing

information demonstrating their falsity. (Compl. ¶ 17, b.) A Defendant must have knowledge to

act with actual malice; therefore, Plaintiff's allegation is sufficient. Further, Defendant does not

contest Plaintiff's allegations of intent. Therefore, the undersigned finds that Levine sufficiently

pled that Meador acted with the requisite intent.

### (4)  Conclusion

For the reasons above, the undersigned finds that Plaintiff sufficiently pled a defamation

claim against Defendant Meador and recommends that the Court deny the motion to dismiss as

to the defamation claim.

### C.  Count II: Insulting Words

The Virginia Code defines insulting words as "[a]ll words shall be actionable which from

their usual construction and common acceptance are construed as insults and tend to violence

and breach of the peace." Va. Code § 8.01-45.  Whether words are "insulting and tend to

violence [and breach of the peace] is determined by the usual construction of the words and their

common acceptance in the community." *Goulmamine*, 138 F. Supp. 3d at 669 (citations omitted).

To allege insulting words, a plaintiff must plead that (1) the words were insulting and (2) tend to

incite violence and breach of the peace. *Id.*

### (1)  Meador's Statements Are Insulting *per se*

"[A]n action for insulting words . . . is treated precisely as an action for slander or libel,

for words actionable *per se*," except publication to a third party is not required. *Goulmamine*, 138 F. Supp. 3d at 669 (citations omitted). And a statement that fits within a defamation *per se* category is also insulting *per se*. *Id.* (citing *Carwile v. Richmond Newspapers*, 196 Va. 1 (1954)) (citations omitted). Here, Defendant does not contest the insulting nature of the statements. Because Defendant's statements are defamatory *per se*, as found above, the undersigned finds that they are insulting *per se*.

     (2)    **Meador's Statements Do Not Tend to Violence or Breach of the Peace**

     The question remains whether Meador's insulting statements were sufficiently offensive to "tended to violence or breach of the peace." *Allen & Rocks, Inc. v. Dowell* 252 Va. 439, 443, 477 S.E.2d 741, 743 (1996). Defendant's Reply argues that the statements do not tend to violence or breach of the peace. (Reply at 17.) The parties disagree whether Meador's statements must have been communicated face to face to be actionable. Plaintiff argues that although these statements were written, they nevertheless may underly a claim for insulting words. *See Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652 (2015). Defendant contends that the Court should require face-to-face interaction. *See Hotung v. Hotung*, 85 Va. Cir. 241, 244 (Cir. Ct. 2012) ("Insulting words, however, require an immediacy that could cause a breach of the peace.").

     Defamatory statements must have some potential to cause a breach of the peace to amount to insulting words. *See Allen & Rocks, Inc. v. Dowell*, 252 Va. at 443. Here, each of Meador's statements were conveyed in written form and not in the presence of the person being insulted. *See* Table 1, *supra.* While Meador's statements may have been personally insulting to Levine and his business reputation, no reasonable juror would find that these statements tend to violence. Meador published these statements in writing to third parties and did not make these

insulting statements in the presence of Levine. An actual breach of the peace did not occur, and

Levine fails to allege any facts or showing that an actual immediate breach of the peace was

likely to occur. *See Steele*, 382 F. Supp. 3d at 422. The undersigned therefore finds that Levine

failed to state a claim for insulting words under Virginia law.

Accordingly, the undersigned recommends that the Court grant Defendant's motion as to

the insulting words count.

### D. Count III: Common Law Conspiracy

The *prima facie* elements of common law conspiracy under Virginia law include:

> (1) an agreement between two or more persons; (2) to participate in
> an unlawful act, or a lawful act in an unlawful manner; (3) an injury
> caused by an unlawful overt act performed by one of the parties to
> the agreement; and (4) that the overt act was done pursuant to and
> in furtherance of the common scheme.

*Skillstorm, Inc. v. Electronic Data Systems, LLC*, 666 F. Supp. 2d 610, 618 (E.D. Va. 2009). A

plaintiff must allege that the defendant and others "combined together to effect a preconceived

plan and unity of design and purpose" *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*,

261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (citing *Hechler Chevrolet, Inc. v. General Motors

Corp.*, 230 Va. 396, 402, 337 S.E.2d 744 (1985)). And because conspiracy must be pled with

particularity, "mere conclusory language is insufficient to state a cause of action for civil

conspiracy under Virginia law." Fed. R. Civ. Pro. 9; *Borg v. Warren*, 545 F. Supp. 3d 291 (E.D.

Va. June 28, 2021) *(citing Lewis v. Gupta*, 54 F. Supp. 2d 611, 618 (E.D. Va. June 3, 1999)

(citations omitted)*. In other words, "Virginia requires a plaintiff to allege some details of time

and place and the alleged effect of the conspiracy." *Borg*, 545 F. Supp. 3d 291 (quoting

*Firestone v. Wiley*, 485 F. Supp. 2d 694, 704 (E.D. Va. May 8, 2007) (internal quotations

omitted)). Conspiracy is not a free-standing claim, and "generally requires proof that an

underlying tort was committed." *Lokhava v. Halper*, 1:19-cv-632 (LMB/JFA), 441 F. Supp. 3d 238 (E.D. Va. Feb. 27, 2020) (quoting *Firestone*, 485 F. Supp. 2d at 703).

Here, Plaintiff sufficiently stated a claim of defamation, the underlying tort for this analysis. The issue is whether Plaintiff sufficiently to alleged "concerted action" between the Defendant, Casto, and JCP.[4] (Mem. Supp. at 25.)  Plaintiff alleges that "[a]fter Levine rejected Meador and ended their relationship, Meador and Casto conceived and implemented a plan to destroy Indeco and Levine." (Compl. ¶ 7.)  Plaintiff does not allege any explicit agreement between Meador and Casto; therefore, their agreement must be implied. *William v. AES Corp.*, 28 F. Supp. 3d 553 (E.D. Va. June 26, 2014).

The undersigned finds that the facts alleged sufficiently state a claim for common law civil conspiracy to defame Levine. Levine claims that Meador and Casto published defamatory statements in concert to extort Indeco and destroy Levine's reputation. (*See* Compl. ¶ 25.) Meador provided Casto with recordings of conversations between Levine and his attorneys, a police report accusing Levine of theft, and a letter that she wrote to the Indeco Union Board. (*See* Compl. ¶ 7.) Meador filed derogatory affidavits in Levine's bankruptcy, which Casto then republished to "extort and injure" Indeco Union. (*Id.*) Meador and Casto corresponded to coordinate the publication and dissemination of the statements and sought to blackmail Indeco into returning the $394,000 that she invested in the company. (*Id.*) Casto used JCP's Facebook page to amplify the Meador's statements and theories about Levine. (*See* Compl. at 5-8.). Meador and Casto's concerted action to spread falsities about Levine harmed his professional

---

[4] JCP is a West Virginia 501(c)(4) non-profit corporation, and Casto is president of JCP. This undersigned treats Casto and JCP as a single entity for the purposes of common law conspiracy. *See SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 617 (E.D. Va. Sept. 9, 2005) (describing how the intracorporate immunity doctrine does not allow an individual acting within the scope of his employment with a corporation to conspire with that entity).

reputation. This defamation campaign caused Indeco Board member Robert Whetsel to resign because he believed that the attacks on Levine were harming the business's business prospects. (*Id.*)

Overall, this concerted action suggests an agreement between Meador and Casto to defame Levine. The undersigned finds that Levine plead a plausible claim for civil conspiracy and recommends that the Court deny the motion to dismiss as to Count III.

### E.  Count IV: Tortious Interference

In the Complaint, Indeco Union alleges tortious interference with contract against Meador. (*See* Compl. ¶¶ 29-35.)  The Court has since dismissed Indeco Union from this case. (Dkt. 34.) In Virginia, shareholders, managers, owners, and employees do not have legal standing to bring suit for tortious interference on behalf of a corporation. *Keepe v. Shell Oil Co.*, 220 Va. 587, 591 (1979). Levine, as CEO of Indeco, does not have standing to bring the tortious interference claim. Further, Plaintiff's Opposition omits Count IV entirely, indicating that the count is no longer in dispute. (*See* Opp. at 1, 21.) Accordingly, the undersigned recommends that the Court grant the motion to dismiss as to Count IV and dismiss the tortious interference claim as moot.

### F.  Count V: Injunction

Plaintiff seeks that the Court enjoin Defendant Meador from repeating defamatory speech about Levine. Defendant's motion to dismiss argues that Plaintiff's request for an injunction should be dismissed because Plaintiff's requested damages are an adequate remedy at law and injunctive relief is a drastic remedy. Whether a prevailing defamation plaintiff may obtain a permanent injunction barring the defendant from repeating that speech is an open question in the Fourth Circuit and Virginia. (Opp. at 21.)

25

To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

(1) that it has suffered an irreparable injury;
(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
(4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

In evaluating the Complaint in the light most favorable to the Plaintiff, the undersigned finds that Plaintiff has alleged sufficient facts to state a claim for injunctive relief. As discussed above, Plaintiff sufficiently plead defamation and common law conspiracy claims against Defendant. Plaintiff's Complaint requests injunctive relief to remedy this defamation because any continued defamatory statements by Defendant would cause irreparable injury to Plaintiff. (*See* Compl. ¶ 37.) Damages are insufficient because Meador is a judgment-proof and wealthy defendant, who will not be deterred by a money judgment. (*See* Compl. 38.) Meador could simply pay the damages award and continue to defame Plaintiff. Therefore, remedies at law are inadequate here. Balancing the hardships favors an injunction because the possible reputational harm to the Plaintiff from experiencing future defamation outweighs any interest that Defendant has in spreading false information about Plaintiff. Defendant will be able to continue to express herself aside from the narrow topics at issue. (*See* Compl. ¶ 39.) Finally, an injunction would be in the public interest because it would prevent the continued spread of false information. (*See* Compl. ¶ 40.)

Accordingly, the undersigned finds that Plaintiff has sufficiently stated a claim for injunctive relief and recommends that the Court deny the motion to dismiss as to injunctive relief.

V.  RECOMMENDATION

For the reasons stated above, the undersigned U.S. Magistrate Judge recommends that the Court: deny the Motion to Dismiss as to judicial estoppel and Count I, III, and V, and grant the motion to dismiss as to Counts II and IV.

VI.  NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it. The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.

/s/

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

March 29, 2022
Alexandria, Virginia